558 So.2d 401 (1990)
William Michael SQUIRES, Appellant,
v.
STATE of Florida, Appellee.
No. 72776.
Supreme Court of Florida.
February 1, 1990.
Rehearing Denied April 24, 1990.
*402 Larry Helm Spalding, Capital Collateral Representative, and Billy H. Nolas, Timothy D. Schroeder, Julie D. Naylor and Martin J. McClain, Asst. Capitol Collateral Representatives, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
William Michael Squires was convicted of the murder of Jesse Albritton during a service station robbery on the night of September 2, 1980. His conviction and sentence of death were affirmed. Squires v. State, 450 So.2d 208 (Fla.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Thereafter, he filed a motion for postconviction relief which was denied without a hearing. On appeal, this Court reversed in part and remanded for an evidentiary hearing on specified issues of ineffective assistance of counsel and violations of the principle of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Squires v. State, 513 So.2d 138 (Fla. 1987). After hearing extensive testimony on these issues, the trial court once again denied the motion. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Squires first argues that his counsel was ineffective for failure to interview Donald Hynes as a possible defense witness. Squires claims that Hynes should have been interviewed because of his potential to provide testimony which would have contradicted the testimony of prosecution witnesses, Terry and Charlotte Chambliss. At trial, the Chamblisses testified that Squires and Hynes had come to their house on the night of the murder and asked them to help them hide their automobile. Terry Chambliss said that Squires told him that he had run into trouble during a robbery and that he had to "dust one." Squires asserts that Hynes would have testified that rather than being at the Chamblisses' house on September 2, 1980, he and Squires actually hid their car at the Chamblisses on the night of September 7, 1980, following an unrelated Thoni's Service Station robbery they had committed.
In some respects, Squires' position could more properly be characterized as complaining that counsel was ineffective for not calling Hynes as a witness because Squires' lawyer, Rick Edwards, actually had a copy of a statement Hynes had given to the police as well as a copy of Hynes' answers given in a polygraph examination. In any event, Edwards testified that the theory of the defense was to demonstrate, through witnesses and receipts signed on stolen credit cards, that Squires was in Alabama and Georgia on or about the time of the murder. Squires furnished most of the information to support the alibi. Early in the case, Squires told Edwards to stay away from Hynes and only suggested just before the trial that he ought to talk to Hynes. At this point, Edwards' investigator could not find Hynes.
Edwards testified that he knew that Hynes would not be able to corroborate Squires' alibi of not being in Tampa on September 2. Furthermore, he also knew Hynes would tell of a damaging conversation with Squires at a Tampa park on September 7 in which Squires told him that Ed Fowler had killed a man while using Squires' car, and he wanted Hynes' advice as to whether he should kill Fowler. In fact, Edwards said he was concerned that Hynes might actually say that Squires was in Tampa on the date of the murder. Thus, he said that when he learned the state was not going to call Hynes, he thought it best to leave him alone.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defense counsel's duty to investigate *403 was at issue. The United States Supreme Court stated:
[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.
Id. at 691, 104 S.Ct. at 2066. Under the circumstances of the instant case, we cannot say that the trial court erred in concluding that Edwards was not ineffective for failing to interview Hynes and to put him on the stand in Squires' defense.
Squires also claims that his counsel was ineffective because he did not attempt to have suppressed certain of Squires' pretrial statements given while he was under medication for injuries suffered when he was captured. When asked at the hearing why he did not seek to have these statements suppressed, Edwards said that Squires never indicated that any of the statements had been made because of the influence of drugs. In all, Squires had made approximately nine statements reflecting varying degrees of incrimination. Edwards said that he knew he could not possibly have all of them suppressed, so he made the tactical decision not to oppose the admission of any of them. According to Edwards:
We thought if a jury heard he made nine confessions or somewhere in that area, that might dilute the veracity of the confessions. Somebody normally would not give nine confessions in a murder first trial. That has been my experience.
Squires did take the stand at the trial and testified that the only reason he made some of the incriminating statements was to be transferred to Florida so as to be sent to Tampa General Hospital where he could receive better medical treatment. The trial judge could properly conclude that given the problems defense counsel faced, his election not to try to suppress the statements was a legitimate tactical decision.
Furthermore, even if it could be said that any aspect of defense counsel's performance was deficient, Squires has failed to demonstrate that the outcome would have probably been different except for the errors of his lawyer. After all, Squires confessed to the killing. While a psychiatrist testified at the postconviction hearing that from his examination of medical records he thought that Squires' pretrial statements were tainted, several persons who actually witnessed these statements testified that Squires was fully competent and did not appear to be under the influence of medication. In an effort to negotiate a plea shortly before the trial, Squires told a detective that he had committed the murder and gave him details only the killer would know. This took place long after he could have been under the influence of medication.
We also find no merit in Squires' argument that the state withheld exculpatory evidence in violation of Brady v. Maryland. Contrary to Squires' original contention, the state had furnished the defense with a copy of Hynes' statement. Moreover, Detective Peterson's deposition statements were not misleading.
We affirm the denial of Squires' motion for postconviction relief.
It is so ordered.
*404 EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.