**William Michael SQUIRES, Petitioner,**

v.

**Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent.**

**No. 90–848–CIV–T–17.**

United States District Court,
M.D. Florida,
Tampa Division.

May 26, 1992.

Billy H. Nolas, Billy H. Nolas, P.A., Julie D. Naylor, Julie D. Naylor, P.A., Ocala, Fla., for petitioner.

Candance M. Sunderland, Dept. of Legal Affairs, Attorney Gen.'s Office, Tampa, Fla., for respondent.

## MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by a state prisoner under sentence of death. The petition was filed on July 9, 1990, together with an application for stay of Petitioner's execution then set for July 10, 1990. In order that Petitioner's claims could be judiciously considered, the Court entered a stay of execution on July 9, 1990, and deferred ruling on the petition until the Eleventh Circuit Court of Appeals resolved the issue of whether execution in the Florida electric chair is cruel and unusual punishment. This issue has since been adequately addressed by the Middle District of Florida and further delay in ruling on this petition is unnecessary.

The complete record has now been compiled. The issues have been briefed, and Petitioner's claims have been fully considered. It is the conclusion of this Court that the petition is without merit, and the Court will deny the petition.

## FACTS SURROUNDING THE OFFENSE

The Supreme Court of Florida, in disposing of Petitioner's direct appeal, *Squires v. State*, 450 So.2d 208, 210 (Fla.1984), recited the facts of the case as follows:

On the evening of September 2, 1980, Jesse Albritton was abducted from the service station where he worked. Incident to the kidnapping, the service station was robbed of an undetermined amount of money and cigarettes. The next day Albritton's body was discovered in a wooded area in Hillsborough County. He had been shot at close range—once in the shoulder with a shotgun and four times in the head with a pistol.

At the time of Albritton's murder, Squires was an escapee from the Florida State Prison System, having been sentenced to three consecutive life sentences. Tampa police apprehended Squires on December 24, 1980, after receiving information of the fugitive's whereabouts from Mrs. Charlotte Chambliss. On April 29, 1981, Squires was indicted and charged with the premeditated murder, robbery, and kidnapping of Albritton.

At trial the state called Rex Seimer, a correctional officer at Lake Butler, and Robert Fain, a prison inmate. Both men testified that Squires admitted to them to killing Albritton. Detective Gerald Helms also testified that Squires had admitted to robbing the victim and to being present when Albritton was shot. However, Squires told Helms that he personally had not pulled the trigger. The state then offered the testimony of Terry and Charlotte Chambliss, both of whom confirmed that Squires was in Tampa on

September 2, 1980, the date of Albritton's abduction and murder. Mr. Chambliss told the court of seeing Squires with several pistols and a shotgun. He also observed several cartons of cigarettes in the back of the defendant's automobile. Finally, Mr. Chambliss recounted a conversation he had with Squires during which Squires stated that he had run into trouble during a robbery and had to "dust one." Squire's defense was basically that of alibi, attempting through testimony and credit card records to place himself somewhere else when the crime was committed.

## HISTORY OF THE CASE

Petitioner was found guilty of first degree murder, robbery, and kidnapping. Following a sentencing hearing, the trial court sentenced Petitioner to death for first degree murder. (R. 1032–1035).[1] The trial court also sentenced Petitioner to life imprisonment on each of the counts of kidnapping and robbery, to be served consecutively. (R. 1035–1036).

On March 15, 1984, the Florida Supreme Court affirmed the convictions and sentences. *Squires v. State*, 450 So.2d 208. The United States Supreme Court denied certiorari on October 9, 1984. *Squires v. State*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

Petitioner filed his initial motion for post conviction relief pursuant to Rule 3.850, Fla.R.Crim.P., *pro se*. Thereafter, he filed an amended motion to vacate judgments and sentences in the state court. Petitioner also filed a motion for an evidentiary hearing and a motion for discovery. On June 4, 1986, Judge M. William Graybill of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida denied the motion for post conviction relief, motion to vacate judgments and sentences, and motion for evidentiary hearing.

Petitioner appealed the denial of his motion for post conviction relief pursuant to

Rule 3.850 to the Florida Supreme Court. On October 1, 1987, the Florida Supreme Court remanded two claims to the trial court for an evidentiary hearing. *Squires v. State*, 513 So.2d 138 (Fla.1987). First, the trial court was to examine whether Petitioner's trial attorney rendered ineffective assistance of counsel by failing to interview Donald Hynes as a possible defense witness and by failing to challenge the admission of Petitioner's incriminating statements made to law enforcement and correctional officers. *Id.* at 139. Second, the trial court was to examine "whether Detective Peterson's deposition statements concerning Donald Hynes were misleading to the defense, and whether the state should have furnished the police report of Hynes' statement to the defense" under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Id.*

Pursuant to the Florida Supreme Court's mandate, the state trial court conducted an evidentiary hearing on April 8, 11, 12 and 13, 1988. On June 8, 1988, Judge John P. Griffin of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, denied Petitioner's Rule 3.850 motion based on the evidentiary hearing as to the claims of ineffective assistance of counsel and *Brady* violations. On February 1, 1990, the Florida Supreme Court affirmed the trial court's denial of Petitioner's Rule 3.850 motion. *Squires v. State*, 558 So.2d 401 (Fla.1990).

On June 1, 1990, Petitioner filed his second Rule 3.850 motion in the state trial court. The trial court denied Petitioner's motion on June 8, 1990. Petitioner appealed the denial of his Rule 3.850 motion to the Florida Supreme Court. In addition, Petitioner filed a petition for writ of habeas corpus with the Florida Supreme Court. On July 5, 1990, the Florida Supreme Court affirmed the decision of the trial court denying the Rule 3.850 motion, and denied the petition for writ of habeas corpus.

---

1. The record of the proceedings in Petitioner's trial and direct appeal will be referred to by the symbol "R" followed by the appropriate page number. The record of proceedings in the state court post conviction evidentiary hearing will be referred to by the symbol "EH" followed by the appropriate page number.

*Squires v. Dugger,* 564 So.2d 1074 (Fla. 1990).

## DISCUSSION

■ Respondent does not dispute the fact that Petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254. Respondent is entitled to waive an exhaustion claim. *Thompson v. Wainwright,* 714 F.2d 1495 (11th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984). Silence on this issue does not necessarily constitute a waiver; however, since no objection has been raised by Respondent, the Court deems that it has been waived. *Davis v. Dugger,* 829 F.2d 1513 (11th Cir.1987).

■ The state trial court has conducted an evidentiary hearing and determined that Petitioner's claims, including his claim of ineffective assistance of counsel, were without merit. Because claims of ineffective assistance of counsel present mixed questions of law and fact, the state court's findings in ineffective assistance claims are not entitled to a presumption of correctness as are factual findings under 28 U.S.C. § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). *Douglas v. Wainwright,* 714 F.2d 1532, vacated 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 affirmed on remand 739 F.2d 531 (11th Cir.1984). Nevertheless, the burden is on Petitioner to establish the need for an additional evidentiary hearing. *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir.) (en banc), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). A review of the transcript of the post conviction evidentiary hearing in the state court has convinced this Court that no further evidentiary hearing is necessary because the state court granted Petitioner wide latitude in presenting evidence, and permitted Petitioner to present testimony that arguably went beyond the scope of the Florida Supreme Court remand. This Court has determined that the state evidentiary hearing afforded Petitioner a full and fair hearing pursuant to the meaning of 28 U.S.C. § 2254(d)(6). Therefore, Petitioner is not entitled to an additional evidentiary hearing. *See Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Petitioner has presented seventeen claims of alleged constitutional deprivation in his present petition. The Court has considered each claim.

### Claim I

Petitioner asserts that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because he was deprived of the effective assistance of counsel at the guilt-innocence phase of his state trial court proceedings. Specifically, Petitioner raises two points under this claim. First, Petitioner asserts that his trial counsel failed to investigate a key defense witness, Donald Hynes. Second, Petitioner asserts that his trial counsel failed to investigate the circumstances surrounding Petitioner's pretrial statements and to challenge the statements' admission into evidence. Petitioner claims that these failings of his trial counsel violated the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

In *Strickland,* the Court established a bifurcated test for claims of ineffective assistance of counsel. First, Petitioner must show that counsel made serious errors which amounted to a deprivation of his guaranteed right to counsel under the Sixth Amendment. Second, Petitioner must show that his trial counsel's ineffective performance prejudiced his defense. In effect, the *Strickland* standard requires a showing that counsel's errors were so serious as to deprive the Petitioner of a fair trial with a reliable result. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.

#### 1. *Failure to Interview Donald Hynes*

■ *Strickland* also established that to provide effective assistance of counsel pursuant to the Sixth Amendment, counsel has a duty to investigate possible defense strategies so that informed professional decisions can be made. *Id.* at 689, 104 S.Ct. at 2065. However, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, ap-

plying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S.Ct. at 2066.

Petitioner claims that Donald Hynes was a key defense witness who was available to testify at trial. According to Petitioner, Hynes' testimony at trial would have undermined the state's theory of prosecution and strongly supported the defense's case. Upon review of the record, this Court finds that defense counsel's decision not to pursue Donald Hynes as a defense witness was a tactical decision that did not prejudice the Petitioner. This finding rests on the following reasoning.

At trial, Petitioner relied on an alibi defense. Petitioner testified as to his whereabouts on the days prior to and after September 2, 1980, the date of Albritton's murder. The defense supported Petitioner's testimony with receipts from stolen credit cards that Petitioner used while traveling throughout the southeastern United States. The defense also introduced evidence of other crimes Petitioner committed on the days immediately prior to September 2, 1980. The underlying theory of Petitioner's defense was that he could not be in two places at once. (R. 785–842).

While preparing for trial, Petitioner's trial counsel examined a statement Donald Hynes made to police. (EH 198–201, Testimony of R. Edwards). This statement showed that Donald Hynes would not be a beneficial defense witness because the potential testimony of Donald Hynes threatened many portions of Petitioner's alibi. First, Hynes stated that he met with Petitioner in Phillipi Park on September 7, 1980. Petitioner's testimony was that this meeting took place on September 4, 1980. (EH 232, Testimony of R. Edwards). Second, Hynes stated that during this meeting with Petitioner in Phillipi Park, Petitioner discussed killing Ed Fowler. (EH 232, Testimony of R. Edwards). Third, Hynes was a convicted felon who befriended Petitioner while they were cellmates in the Florida State Prison system. (EH 11–12, Testimony of D. Hynes).

The contents of Hynes' statement to the police threatened the way the jury could have perceived Petitioner's alibi defense in several ways. These perceptions would have weakened the alibi defense. First, a critical element of Petitioner's alibi was his location on dates prior to and after September 2, 1980. Hynes' testimony that a particular event in Petitioner's alibi occurred on a different date than the date alleged by Petitioner would have been detrimental to Petitioner's credibility and to his alibi defense. Second, Hynes' alleged testimony that he and Petitioner discussed whether or not Petitioner should kill Ed Fowler because Fowler bungled a robbery and someone had to be "dusted" would have further weakened Petitioner's credibility and the credibility of the alibi defense as a whole. Preventing the jury from knowing that Petitioner contemplated killing Fowler was a key element in maintaining credibility. Finally, any possible testimony by Hynes that might have bolstered the defense would have been diminished because he lacked credibility. Hynes was a convicted felon. For these reasons Petitioner's counsel's decision not to call Hynes as a defense witness was a legitimate tactical decision. This decision was reasonable under the circumstances and was further supported by Petitioner's statement to trial counsel to stay away from Hynes. (EH 212, Testimony of R. Edwards). *See Arrowwood v. Cleusen,* 732 F.2d 1364, 1369 (7th Cir.1984); *U.S. v. Dyer,* 784 F.2d 812 (7th Cir.1986).

In addition to being a legitimate tactical decision, trial counsel's decision not to investigate Donald Hynes did not prejudice Petitioner as required by the second prong of the *Strickland* test. Hynes admitted at the evidentiary hearing that he participated, along with Petitioner and Terry Chambliss, in the Thoni gas station robbery on September 7, 1980. (EH 23, Testimony of D. Hynes). This robbery was similar to the robbery at the United 500 Service Station on September 2, 1980. Albritton was abducted from the United 500 Station and later murdered. Showing the jury that Petitioner committed a similar gas station robbery only five days after the alleged robbery and murder at issue in the present case would have negatively impacted the

jury. This testimony relating to a subsequent similar robbery coupled with the inconsistencies that Hynes' testimony would have highlighted in Petitioner's story; the conversation about killing Ed Fowler; and Hynes' prior criminal record would have prevented his being a beneficial defense witness. This Court finds that trial counsel's decision not to interview Donald Hynes as a potential witness was a legitimate tactical decision under the circumstances, and it did not prejudice Petitioner's defense.

Accordingly, this portion of Petitioner's claim is DENIED.

### 2. Failure to Suppress Petitioner's Pretrial Statements

■ Petitioner further contends that his trial counsel was ineffective because he did not attempt to suppress pretrial statements Petitioner made while he was allegedly under the influence of medication. Petitioner made at least nine statements to police, prison employees, and fellow inmates admitting varying degrees of involvement in Albritton's murder. In some of the statements, Petitioner claims to have been present only while Albritton was murdered. In other statements, Petitioner claims that he pulled the trigger.

Petitioner's trial counsel testified at the state evidentiary hearing and explained his reasons for not attempting to suppress the series of statements made by Petitioner. (EH 220–224, Testimony of R. Edwards). First, trial counsel stated that he was not informed by Petitioner that any of the statements were made while Petitioner was under the influence of medication. Second, trial counsel stated that he did not think he could convince the court to suppress all nine statements. Instead, trial counsel decided not to object to the admissibility of any of the statements. Trial counsel attempted to explain that Petitioner was confessing so that he would be transferred to Tampa where he could receive better medical treatment than he was receiving at the Avon Park Correctional Institute. Petitioner's ultimate goal was to escape from Tampa General Hospital. (EH 220–224, Testimony of R. Edwards). This is evidenced by the following testimony by trial counsel at the state evidentiary hearing:

Our strategy was to go ahead and let all of those come in, because we wanted to show the jury that Mr. Squires had made all kinds of confessions. He had confessed to [all most] (sic) everybody. But it was really a lark, because, in essence, he got on the stand and even admitted this, that he really wanted to get back to Tampa, Florida. A lot of these people were in Florida that he made these confessions to. He planned to get medical treatment at Tampa General. From there he hoped he could perfect an escape. (EH 221, Testimony of R. Edwards).

This Court finds that the choice not to challenge the admission of Petitioner's pretrial statements was another legitimate tactical decision made by Petitioner's trial counsel. First, Petitioner's statements were inconsistent. In statements made to Richard Fain, a fellow prisoner, and Rex Seimer, a correction officer within the prison system, Petitioner claimed to have participated in Albritton's murder. However, in statements to police officers, Petitioner claimed less involvement in the murder. These inconsistencies bolstered Petitioner's assertion that he made statements to effectuate a transfer to Tampa. These inconsistencies suggested that Petitioner did not know details about the murder. If some, but not all of the statements had been excluded, the inconsistencies would not have been as apparent as they were when all statements were considered. Therefore, the inconsistencies, as an aid to the defense, would have lost their effect. Second, Petitioner would have had extreme difficulty convincing the court to exclude statements made to people other than police officers. Since statements made to non-police officers were the most incriminating, adding inconsistent statements made to police officers was a possible way of explaining the more incriminating statements.

■ Additionally, Petitioner has failed to show that the outcome of his trial was

affected by his trial counsel's strategy. Petitioner has failed to assert any argument that persuades this Court that Petitioner could have convinced the trial court to suppress all of his pretrial statements. Although Petitioner had a psychiatrist testify at the post-conviction hearing that Petitioner was not competent at the time the statements were made, this testimony does not persuade this Court that all of the statements could have been suppressed at trial. The psychiatrist testified based on review of Petitioner's medical records. The psychiatrist concluded that Petitioner was not competent at the time he made the pretrial statements because Petitioner was under the influence of strong medication. (EH 260–264, Testimony of Dr. W. Afield). However, the psychiatrist's testimony is contradicted by witnesses who observed Petitioner while he was making the statements and testified that he appeared competent and not under the influence of medication. Petitioner has not asserted any possible basis for the exclusion of all of Petitioner's pretrial statements. Petitioner has not demonstrated that he was prejudiced in any way by his trial counsel's strategy. Consequently, trial counsel's decision not to challenge the admission of the pretrial statements was a legitimate tactical decision that did not prejudice the Petitioner.

Accordingly, this portion of Petitioner's claim is DENIED.

### Claim II

■ Petitioner asserts that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because he was deprived of the effective assistance of counsel at the sentencing phase of his state trial court proceedings. Specifically, Petitioner asserts that the jury did not hear anything in mitigation during the penalty phase because trial counsel had not adequately prepared evidence of mitigating factors.

The *Strickland* ineffective assistance of counsel test is applicable to assistance of counsel at the penalty phase. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. at 2069. When "a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. at 2069. Furthermore, when defense counsel consults with his client and decides not to put on mitigating evidence, counsel is not ineffective if evidence of mitigating circumstances is weak and evidence of aggravating circumstances is strong. *Tafero v. Wainwright*, 796 F.2d 1314 (11th Cir.1986) *cert. denied* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 782 (1987). Considering the overwhelming aggravating circumstances in the present case, Petitioner has failed to show that he was prejudiced by counsel's failure to present mitigating factors.

The trial court found the following aggravating factors:

1. The capital felony was committed by a person under the sentence of imprisonment;

2. The defendant was previously convicted of another capital felony or of a felony involving the threat of violence to the person;

3. The capital felony was committed while the defendant was engaged, or was an accomplice in the commission of, or an attempt to commit, or flight after robbery, rape, arson, burglary, kidnapping or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb;

4. The capital felony was especially heinous, atrocious, or cruel; and

5. the capital felony was homicide and was committed in a cold, calculated, and premeditated manner without any pretense or moral or legal justification. (R. 117–126).

To rebut these aggravating factors, Petitioner claims that trial counsel should have presented mitigating evidence of Petitioner's troubled childhood. Among other things, Petitioner asserts that he was still-

born and a neighborhood crazy lady resuscitated him by blowing her craziness into him. Petitioner further asserts that he was beaten and sexually assaulted by stepparents at a young age and that these events led directly to his problems with the law.

Assuming that these unfortunate circumstances are true, Petitioner has failed to show that he was prejudiced because they were not brought out at the penalty phase of his trial. Errors by counsel at the capital sentencing phase of the trial require reversal only if there is a reasonable probability that the jury would not have sentenced the defendant to death absent the error. *Mitchell v. Kemp*, 762 F.2d 886 (11th Cir.1985). When mitigating evidence not offered at trial is weak and there is overwhelming evidence of aggravating circumstances surrounding the murder, no reasonable probability exists that the jury would have reached a different result. *Tafero v. Wainwright*, 796 F.2d 1314. The sentencing order and the record of this case establish that Petitioner was personally responsible for the execution style murder of Jesse Albritton. The aggravating factors are clear, and the evidence of Petitioner's unfortunate childhood does not outweigh these factors. Therefore, this Court finds that Petitioner was not prejudiced by trial counsel's failure to present mitigating evidence of Petitioner's troubled childhood.

Accordingly, this claim is DENIED.

### Claim III

Petitioner asserts that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated because he was not present at the time critical testimony was taken. Specifically, Petitioner contends that Charles Barr, a Georgia auto mechanic who repaired Petitioner's car near the time of Albritton's murder, gave testimony via a telephonic deposition, and Petitioner was not permitted to be present. Petitioner failed to raise this issue on direct appeal. This issue was raised for the first time in Petitioner's Rule 3.850 motion.

█ In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that failure to raise claims timely during the state appellate process bars federal habeas review unless Petitioner can show cause for the default and actual prejudice from the alleged constitutional violations. Petitioner failed to present this claim timely during the state appellate proceedings. To demonstrate cause and prejudice, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Petitioner has not offered any explanation for trial counsel's failure to raise this issue on direct appeal. Therefore, Petitioner is procedurally barred from raising it at the present time.

█ In addition, Petitioner has failed to show that he was substantively prejudiced by trial counsel's failure to raise this claim on direct appeal. Mr. Barr testified that he repaired Petitioner's Camaro. Although Mr. Barr was not certain as to the exact date of his meeting with Petitioner regarding the repair, Mr. Barr testified that thought it was September 2, 1980, because he remembered it as being the day after Labor Day. (R. 373–375, Testimony of C. Barr). Petitioner alleges that if he had been present during Mr. Barr's telephone testimony, he could have advised his trial counsel of the questions to ask so that Mr. Barr would have been certain that his meeting with Petitioner occurred on September 2, 1980. Although not sure of the exact date, Mr. Barr was certain that Petitioner left his shop at 11:00 a.m. on that day. This Court finds that even if Mr. Barr were certain that he met Petitioner on September 2, 1980, the jury could have found that Petitioner had time to drive to Tampa and participate in Albritton's murder after the meeting. The jury could have believed Mr. Barr and still found the Petitioner guilty. Therefore, the Court finds that Petitioner was not prejudiced by his absence during the telephone deposition of Charles Barr.

Accordingly, this claim is DENIED.

## Claim IV

 Petitioner asserts that his rights under Sixth, Eighth, and Fourteenth Amendments were violated because the defense was misled by Detective Peterson's false deposition statements. Petitioner contends that Respondents' failure to clarify these statements denied Petitioner due process of law.

This claim was the subject of the evidentiary hearing in the state trial court. The state trial court denied the claim, and the Florida Supreme Court affirmed the trial court's decision. *Squires v. State*, 558 So.2d 401. Factual findings by the state court are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722. "Detective Peterson's deposition statements were not misleading." *Squires v. State*, 558 So.2d at 403. Since Petitioner alleges no new facts to alter this conclusion, Petitioner was not deprived of due process of law by this deposition testimony.

Accordingly, this claim is DENIED.

## Claim V

Petitioner asserts that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because the state suppressed material evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Petitioner contends that the Donald Hynes' police report, the United 500 Station fingerprint reports, and the police ballistics report were favorable to the defense. Petitioner contends that Respondents' failure to supply these reports to the defense deprived him of due process of law.

According to the Supreme Court's decision in *Brady*, the prosecution must disclose to the defense exculpatory evidence in its possession. *Id.* To establish a *Brady* claim, Petitioner must show that: 1) the prosecution suppressed evidence; 2) the evidence was favorable to him; and 3) the evidence was material to the establishment of Petitioner's guilt or innocence. *Id.* Respondents' duty to disclose under *Brady* pertains only to evidence that is advantageous to a defendant and which, if suppressed, would deprive him or her of a fair trial. *United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985); *Hardin v. Black*, 845 F.2d 953, 960 (11th Cir.1988).

### 1. *Donald Hynes' Police Report*

 Donald Hynes' police report was also the subject of the evidentiary hearing in the state trial court. The state court held that Hynes' report was in fact provided to the defense. The Florida Supreme Court affirmed this finding. *Squires v. State*, 558 So.2d at 403. Factual findings by the state court are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722. Petitioner alleges no new facts in support of his claim regarding the Hynes' report. Since the state court found that the defense was provided with a copy of the police report, this Court finds that Petitioner was not deprived of due process of law.

Accordingly, this portion of Petitioner's claim is DENIED.

### 2. *United 500 Station Fingerprint Report*

 Petitioner claims that Tampa Police Department and Hillsborough County Sheriff's Office reports contained good, usable fingerprints "lifted" from the United 500 Station. Petitioner contends that these reports led to the investigation of other suspects prior to Petitioner's becoming a suspect. Petitioner claims that Respondents allowed the false impression to be conveyed to the jury that no good fingerprints were found at the station. Petitioner contends that if the fingerprint reports had been provided to the defense, trial counsel could have better established to the jury that Petitioner's fingerprints were not found at the scene.

Petitioner has failed to establish the three elements necessary for a *Brady* claim. Although the arguably favorable reports were not provided to the defense, Petitioner has not established that the reports were material to the establishment of

his guilt or innocence. The fingerprint reports would not have led to Petitioner's acquittal. In fact, the record demonstrates that Petitioner's trial counsel cross-examined Respondents' fingerprint expert carefully. During the cross-examination, it became clear that none of the fingerprints found at the United 500 Station matched Petitioner's fingerprints. (R. 472–475, Testimony of B. Fletcher). This is the exact point the Petitioner needed to make. Therefore, the fingerprint reports were not material evidence required to be provided to the defense under *Brady*.

Accordingly, this portion of Petitioner's claim is DENIED.

### 3. *The Ballistics Report*

■ Petitioner claims that Detective Nelms testified that ballistics reports were never completed on any weapon recovered from Petitioner. Petitioner claims that this testimony contradicts Detective Nelms' police report dated January 11, 1981, in which Nelms stated that ballistics reports were to be done on a .38 revolver and a 12 gauge Remington automatic shotgun. Petitioner asserts that these ballistics reports should have been provided to the defense because they were essential to impeach Detective Nelms.

Petitioner has again failed to establish the three elements necessary for a *Brady* violation. Although the ballistics reports may have been favorable to the defense, Petitioner has not established that they were material to the establishment of his guilt or innocence. The ballistics reports would not have led to Petitioner's acquittal considering the overwhelming evidence that Petitioner murdered Albritton. Furthermore, suppressed evidence useful only for impeachment purposes is only material if its disclosure probably would have resulted in acquittal. *United States v. Darwin*, 757 F.2d 1193, 1202 (11th Cir.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 896, 88 L.Ed.2d 930 (1986). There is no indication in the petition that the impeachment of Detective Nelms with the ballistics reports from weapons recovered from Petitioner would have resulted in his acquittal.

Therefore, the ballistics reports were not material evidence required to be provided to the defense under *Brady*.

Accordingly, this portion of Petitioner's claim is DENIED.

### Claim VI

■ Petitioner's next claim arises out of the circumstances surrounding the execution of Jesse Tafero on May 4, 1990. During Tafero's execution, the Florida electric chair malfunctioned. Witnesses observed flames, sparks, and smoke coming from Tafero's hooded head. These eyewitness accounts have led to differing opinions on the subject of whether Tafero suffered unnecessary pain. Based on the problems that arose during Tafero's execution, Petitioner claims that the State of Florida is incapable of executing prisoners without inflicting unnecessary pain and torture.

The Middle District of Florida has addressed the operation of the electric chair on at least two occasions. In *Buenoano v. Dugger*, 1990 WL 119637 (M.D.Fla., June 22, 1990), Judge Fawsett of the Orlando Division held an evidentiary hearing on the subject. Judge Fawsett found that the problems accompanying the Tafero execution did not have a substantial probability of reoccurring, based on evidence presented at the hearing. The evidence included the following: 1) that the Department of Corrections' determination that a defective sponge caused the problems in the Tafero execution was supported by independent testing by the Florida Department of Agriculture; 2) that the Department of Corrections has examined and tested all equipment involved in the electrocution process; 3) that the testing was supervised by qualified electricians who also performed additional conductivity tests.

The operation of the electric chair was also addressed by Judge Melton of the Jacksonville Division in *Hamblen v. Dugger*, 748 F.Supp. 1498 (M.D.Fla.1990), *cert. den.*, — U.S. —, 110 S.Ct. 3289, 111 L.Ed.2d 797 (1990). Judge Melton adopted the findings of Judge Fawsett. In addition, Judge Melton addressed two other arguments similar to those raised in this

petition. First, Judge Melton found no merit to the argument that a power failure on May 7, 1990, at the Florida State Prison was evidence that the electric chair continues in disrepair. Second, Judge Melton found no merit to the argument that Department of Corrections' officials seeking repair of the electric chair's head gear within the prison was evidence of the alleged defective condition of the head electrode. Judge Melton determined that this proffered evidence along with the potential testimony of Fred Leuchter, an expert in execution by electrocution, did not undermine Judge Fawsett's findings. *Id.* at 1502.

Petitioner has not asserted any evidence to refute Judges Fawsett and Melton's findings or to show why they should not be followed. Electrocution is constitutional. *In re Kemmler,* 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Porter v. Wainwright,* 805 F.2d 930, 943 n. 15 (11th Cir.1986); *Sullivan v. Dugger,* 721 F.2d 719, 720 (11th Cir.1983). Furthermore, the need to apply current more than once in an execution does not violate constitutional standards. *See Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947) (plurality opinion of Reed, J.). Jesse Tafero's execution involved unfortunate circumstances. However, an occasional malfunction that may produce added anguish does not establish that a method of execution is unconstitutional. *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Absent a showing establishing a pattern of malfunctions in the operation of the electric chair, the Court cannot conclude that unnecessary pain is being inflicted during executions in the Florida electric chair. This conclusion is supported by the successful executions that have occurred since the Tafero problems. Petitioner has not proven that the events surrounding the execution of Jesse Tafero have a substantial probability of reoccurring.

Accordingly, this claim is DENIED.

### Claim VII

 Petitioner asserts that his rights under the Eighth and Fourteenth Amendments were violated because the sentencing jury was not properly instructed. Specifically, Petitioner claims that the sentencing jury was not given proper instructions on relevant aggravating circumstances including the "heinous, atrocious, or cruel" aggravating circumstance and the "cold, calculated, and premeditated" aggravating circumstance.

Petitioner challenged the finding of the heinous, atrocious or cruel and the cold, calculated, or premeditated aggravating circumstances in his state court appeals. The Florida Supreme Court found that there was sufficient evidence for the jury to find both of these aggravating factors in the present case. *Squires v. State,* 450 So.2d at 210. Petitioner has subsequently added a new claim. He alleges that the trial court failed to give appropriate limiting instructions to the jury regarding the aggravating circumstances. Petitioner failed to raise this claim in his direct appeal. Petitioner raised this claim for the first time in his petition for writ of habeas corpus to the Florida Supreme Court.

As previously addressed, failure to raise claims timely during the state appellate process bars federal habeas review unless Petitioner can show cause for the default and actual prejudice from the alleged constitutional violations. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. Petitioner has not demonstrated any independent, objective factor external to the defense that prevented counsel from complying with the procedural rules and raising this claim in his direct appeal. *See Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. Therefore, Petitioner is procedurally barred from raising this claim at the present time.

Accordingly, this claim is DENIED.

### Claim VIII

 Petitioner asserts that his rights under the Eighth and Fourteenth Amendments were violated because aggravating circumstances were unconstitutionally applied during the sentencing phase of the state court proceedings. Specifically, Petitioner challenges the trial court's finding that: 1) the capital felony was committed

by a person under the sentence of imprisonment, and 2) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person. Petitioner claims that these aggravating circumstances were found based solely on the testimony of the Petitioner without any certified judgments or sentences being entered into evidence.

This claim is without merit. Petitioner does not provide any case support for the proposition that a sentencing court cannot rely on the testimony of the defendant to find aggravating circumstances. The record is clear that Petitioner was an escapee from the Florida State Prison system at the time he murdered Jesse Albritton. Furthermore, trial counsel conceded during his penalty phase argument that Petitioner had previously been convicted of a felony involving the use or threat of violence to the person. (R. 1026). The trial court's determination that these two aggravating circumstances were present is supported by substantial evidence in the record. Furthermore, Petitioner does not contend that the findings of the trial court are false.

Accordingly, this claim is DENIED.

### Claim IX

██ Petitioner asserts that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because the trial court improperly admitted evidence of "other crimes" committed by Petitioner. Specifically, Petitioner challenges the admission of testimony concerning a shootout between Petitioner and law enforcement officers during his arrest in Carrollton, Georgia.

This claim involves a pure question of state law. Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. *Carrizales v. Wainwright*, 699 F.2d 1053, 1054 (11th Cir.1983). Furthermore, a state court interpretation of its own laws or rules provides no basis for federal habeas corpus relief since no question of a constitutional nature is involved. *Id.* at 1055. See also, *Machin v. Wainwright*, 758 F.2d 1431 (11th Cir.1985).

The present claim was addressed by the Florida Supreme Court. *Squires v. State*, 450 So.2d at 210. In denying relief, the court stated:

... Squires contends that the trial court violated the *Williams* Rule by permitting the state to introduce testimony that he had, on several occasions, shot at persons other than the victim. Squires argues that this testimony introduced prejudicial evidence of his alleged criminal activity unrelated to the charges brought at trial and served no purpose but to illustrate his bad character. *Williams v. State*, 110 So.2d 654 (Fla.), *cert. denied*, 361 U.S. 847 [80 S.Ct. 102, 4 L.Ed.2d 86] (1959); § 90.404(2)(a), Fla.Stat. (1981).

We cannot agree. The record shows that appellant put forward testimony of Officer Kinnard who stated that Squires had personally spared his (Kinnard's) life during an unrelated kidnapping episode. Squires then took the stand and made additional self-serving statements regarding his aversion to killing. Only after the accused entered these statements did the state produce the challenged testimony linking Squires with other shootings. By attempting to demonstrate his non-violent character, Squires had placed this alleged trait in issue. The trial court properly allowed the state to rebut these assertions on non-violent character by showing that Squires had fired deadly weapons at persons other than the victim. *Lewis v. State*, 377 So.2d 640 (Fla. 1979); § 90.404(1)(a), Fla.Stat. (1981).

This finding by the Florida Supreme Court is binding on this Court. *See Hall v. Wainwright*, 493 F.2d 37 (5th Cir.1974).

Accordingly, this claim is DENIED.

### Claim X

Petitioner asserts that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated because the trial court failed to instruct the jury on excusable and justifiable homicide. At trial, state and defense counsel stipulated as to instructions to be given to the jury. (R. 71–100, 214–244). The stipulated instructions included an instruction that "a killing that is excusable or was committed by the

use of justifiable deadly force is lawful." (R. 73, 217). Petitioner claims that this instruction was insufficient absent instructions defining "excusable" and "justifiable deadly force."

 This claim is without merit for two reasons. First, this claim involves a question of pure state law. Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. *Carrizales v. Wainwright,* 699 F.2d at 1054. Second, Petitioner is procedurally barred from raising this issue on appeal because he failed to timely object to the instructions during the trial. Failure to raise a contemporaneous objection in the trial court precludes review absent evidence of fundamental error. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. In a case involving first degree murder, an error or omission in an instruction regarding a lesser included offense is not fundamental error. *See Ray v. State,* 403 So.2d 956 (Fla.1981); *Dobbert v. State,* 328 So.2d 433 (Fla.1976); *affirmed,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

Accordingly, this claim is DENIED.

### Claim XI

 Petitioner asserts that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated because the trial court did not timely weigh aggravating and mitigating circumstances. Petitioner claims that the trial judge did not enter a written sentence with factual findings until eleven days after Petitioner was orally sentenced to death. Petitioner claims that this was not the contemporaneous and independent weighing by the court that the applicable statutory and constitutional standards require.

Petitioner first raised this claim in his petition for writ of habeas corpus to the Florida Supreme Court. The Florida Supreme Court held that this issue was procedurally barred. *Squires v. Dugger,* 564 So.2d at 1076–77. The court further stated that:

> ... Even if the argument had been made, it would not have been successful. See *Muehleman v. State,* 503 So.2d 310

(Fla.) (death sentence sustained when written order followed jury's recommendation by two and one-half months), *cert. denied,* 484 U.S. 882 [108 S.Ct. 39, 98 L.Ed.2d 170] (1987). It was not until *Grossman v. State,* 525 So.2d 833 (Fla. 1988), *cert. denied,* [489 U.S. 1071] 109 S.Ct. 1354 [103 L.Ed.2d 822] (1989), that this Court established its prospective rule that all written orders imposing a death sentence should be filed concurrent with the pronouncement of death. *Id.* at 1077.

Since Petitioner has failed to show cause and prejudice for the default, he is procedurally barred from raising this issue at the present time. Furthermore, since the Florida Supreme Court intended the rule in *Grossman* to operate prospectively, the *Grossman* rule is not applicable here.

Accordingly, this Claim is DENIED.

### Claim XII

Petitioner asserts that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated because he was not provided with effective assistance of counsel on direct appeal. Specifically, Petitioner contends that appellate counsel failed to act as an advocate by ignoring obvious instances of reversible error in the record. Petitioner further contends that appellate counsel was ineffective because the transcripts of several bench conferences held during the trial were not included in the appellate record.

 Petitioner was entitled to the effective assistance of counsel on direct appeal because Florida provides for direct criminal appeal as a matter of right. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The *Strickland* ineffective assistance of counsel test is applicable to appellate counsel as well. *Id.* In order to satisfy the *Strickland* bifurcated test, Petitioner must first show that appellate counsel made serious errors during the preparation of his appeal. Second, Petitioner must show that his appellate counsel's ineffective performance was prejudicial. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.

Petitioner fails to raise any specific instance of reversible error that was not addressed by appellate counsel on direct appeal. The errors alleged by Petitioner focus on appellate counsel's failure to ensure that a complete record was compiled for direct appeal. However, Petitioner fails to allege any particular event that was precluded from the record that resulted in prejudice to Petitioner. Therefore, Petitioner has not satisfied the requirements of the *Strickland* test for ineffective assistance of counsel since Petitioner has not demonstrated any prejudice caused by the performance of his appellate counsel.

Accordingly, this claim is DENIED.

### Claim XIII

Petitioner asserts that his rights under the Eighth Amendment were violated because his death sentence was based on an unconstitutional automatic aggravating circumstance. Specifically, Petitioner contends that his conviction for felony murder automatically led to the court's finding that he murdered while in the course of a robbery. Petitioner contends that this automatic aggravating circumstance resulted in the unconstitutional imposition of the death penalty.

The United States Supreme Court has held that it is permissible to use an element of the underlying crime as an aggravating circumstance during the penalty phase of a trial. In *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the Court upheld a Louisiana capital punishment statute in which the intent to kill more than one person was an element of first degree murder as well as an aggravating circumstance. *Id.* at 239, 108 S.Ct. at 551. The Court noted that the use of aggravating circumstances is a means of narrowing defendants eligible for the death penalty and channeling the jury's discretion. *Id.*

The Eleventh Circuit Court of Appeals has reached similar results. In *Bertolotti v. Dugger*, 883 F.2d 1503 (11th Cir.1989), the defendant was convicted of felony murder. The appellate court upheld the trial court's finding as an aggravating circumstance the fact that the murder occurred in the course of a robbery. The appellate court relied on *Lowenfield* and held that:

Florida may narrow the class of death-eligible defendants at either the guilt phase or the penalty phase of capital trials. Moreover, consistent with the judge's instructions, the jury could have found Bertolotti guilty of felony murder and yet still not have concluded that the parallel aggravating circumstance justified the imposition of capital punishment; nor need the sentencing judge have agreed with the jury's determination that felony murder had been proven beyond a reasonable doubt ... In no sense did the jury's verdict of felony murder automatically predestine the judge's imposition of Florida's highest penalty. *Id.* at 1527–28.

Furthermore, use of elements of a crime as aggravating circumstances is not unconstitutional when other valid aggravating circumstances are present. *Ritter v. Thigpen*, 828 F.2d 662 (11th Cir.1987).

The present case is factually similar to *Bertolotti*. The trial judge properly instructed the sentencing jury regarding the relevant aggravating circumstances. Therefore, finding Petitioner guilty of felony murder did not automatically result in the imposition of the death penalty. In addition, the trial court found four other aggravating circumstances present in the murder of Albritton. This Court finds that Petitioner was not sentenced to death solely because the murder occurred in the course of a robbery.

Accordingly, this claim is DENIED.

### Claim XIV

Petitioner asserts that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated because the penalty phase jury instructions shifted the burden to Petitioner to prove that death was not appropriate. Petitioner failed to raise this issue on direct appeal. This issue was raised for the first time in Petitioner's writ of habeas corpus to the Florida Supreme Court.

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, the Supreme

Court held that failure to raise claims timely during the state appellate process bars federal habeas review unless Petitioner can show cause for the default and actual prejudice from the alleged constitutional violations. Petitioner failed to present this claim timely during the state appellate proceedings. To demonstrate cause and prejudice, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. Petitioner has failed to provide any explanation for trial counsel's failure to raise this issue on direct appeal. Therefore, Petitioner is procedurally barred from raising it at the present time.

Accordingly, this claim is DENIED.

### Claims XV, XVI, XVII

Petitioner's last three claims are procedurally barred because Petition failed to raise these issues on direct appeal. In Claim XV, Petitioner asserts that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because the Prosecutor improperly asserted that sympathy and mercy towards the Petitioner were improper.

In Claim XVI, Petitioner asserts that his rights under the Sixth, Eighth and Fourteenth Amendments were violated because he was denied a fair and reliable capital and sentencing trial when the State urged that Petitioner be convicted and sentenced to death on the basis of victim impact and other impermissible factors.

In Claim XVII, Petitioner asserts that his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated because the jury was erroneously instructed that a sentence of life imprisonment must be made by a majority of the jury. Petitioner further asserts that this jury instruction misled the jury as to its role at sentencing and created the risk that death was imposed despite factors calling for a life sentence.

As previously stated, failure to raise claims timely during the state appellate process bars federal habeas review unless Petitioner can show cause for the default and actual prejudice from the alleged constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. Petitioner has not demonstrated any independent, objective factor external to the defense that prevented counsel from complying with the procedural rules and raising this claim on direct appeal. *See Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. Therefore, Petitioner is procedurally barred from raising this claim at the present time.

Accordingly, these claims are DENIED and it is

ORDERED:

That the petition for a writ of habeas corpus is hereby DENIED.

DONE and ORDERED.