No. 86–7066. MUEHLEMAN *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied. 

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth

and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would vacate the judgment of the Florida Supreme Court insofar as it left undisturbed the sentence of death imposed in this case. But even if I did not hold this view, I would grant this petition for writ of certiorari in order to clarify the relationship between several recent precedents of this Court. Our opinions in *United States* v. *Henry*, 447 U. S. 264 (1980), *Maine* v. *Moulton*, 474 U. S. 159 (1985), and *Kuhlmann* v. *Wilson*, 477 U. S. 436 (1986), all examined the circumstances in which the police may, consistent with the Sixth Amendment, obtain incriminating statements from an accused through an informant. We found Sixth Amendment violations in *Henry* and *Maine*, but not in *Kuhlmann*, relying on the slightly different factual circumstances of the cases. These divergent rulings create a potential for misunderstanding when other courts seek to interpret them, as the Florida Supreme Court's opinion in this case demonstrates. We should grant certiorari to resolve the uncertainty created by our own holdings.

## I

On May 2, 1983, 96-year-old Earl Baughman hired petitioner, 18-year-old Jeffrey Allen Muehleman, as a "helper." On May 4, petitioner took Baughman to the bank to cash his Social Security check. On May 5, Baughman and his 1961 Cadillac were reported missing. The following day, sheriff's deputies of Pinellas County, Florida, detained petitioner to ask him about the disappearance. Petitioner told a deputy that his name was "Ed Buchanan." He was then arrested for obstructing justice by giving false information, an offense later declared unconstitutional by the Florida Supreme Court in *Bunnell* v. *State*, 453 So. 2d 808 (1984). Petitioner waived his *Miranda* rights and gave a statement that included his true name and a confession to taking some small items without Baughman's permission. Petitioner denied, however, any involvement in Baughman's disappearance. After Baughman's body was found in the trunk of his Cadillac on a St. Petersburg, Florida, street, the police again interviewed petitioner at the maximum-security county jail facility where he was being held. Petitioner continued to deny any involvement in Baughman's death.

While he was in the Pinellas County Jail, petitioner came into contact with Ronald Rewis, who was awaiting sentence on a fel-

ony conviction. According to Rewis, petitioner confessed in detail to the murder of Baughman during unsolicited conversations with Rewis in the jail laundry where both inmates worked. Rewis, who had provided information to correctional officials on at least two previous occasions, then contacted a correctional official who put him in touch with the detectives investigating Baughman's disappearance and death. The detectives told Rewis to let them know if petitioner said anything else and persuaded him to wear a wire to get a tape of petitioner's confession. Rewis then taped a conversation with petitioner in the recreation yard. On the tape, Rewis asked petitioner why he did not merely take the old man's money, to which petitioner responded that he had planned all along to kill the man. Pet. for Cert. 8. When Rewis asked petitioner whether the killing bothered him, petitioner responded "no" and laughed. *Ibid.* Although Rewis was not paid for his cooperation with the investigation, one of the detectives agreed to appear at Rewis' sentencing hearing, at which he received a much lighter sentence than that recommended by the prosecutor.

The detectives, tape in hand, interviewed petitioner again. Petitioner initially continued to deny his involvement with the crime, but when confronted with the evidence against him, including the statements taped by Rewis, petitioner admitted killing Baughman and gave a detailed statement. The detectives then booked petitioner on charges of first-degree murder.

Petitioner filed a pretrial motion to suppress his statements to Rewis and his subsequent confession. When his suppression motion was denied, petitioner entered a plea of guilty. At a penalty trial before a jury, petitioner continued to object to the admission of Rewis' testimony and the tape Rewis had made. During closing argument, the prosecution played a portion of the tape and argued that petitioner's laughter when asked about the murder supported imposition of the death penalty. By a vote of 10 to 2, the jury recommended that petitioner be sentenced to death, and the trial court so sentenced him. On appeal, petitioner raised a host of challenges to his conviction and sentence, all of which were rejected by the Florida Supreme Court. 503 So. 2d 310 (1987). In his petition for a writ of certiorari, petitioner focuses solely on the government's use of Rewis to obtain incriminating statements from him while he was in jail.

## II

We first considered the problem of the inmate informant in *United States* v. *Henry*, 447 U. S. 264 (1980). We held that Henry's right to counsel was violated when the Government used a paid informant's testimony regarding incriminating statements made by Henry while he was jailed awaiting trial. Three factors convinced us that the Government had overstepped the bounds of the Sixth Amendment. First, the informant was paid a contingent fee for information he obtained. Second, Henry was unaware that his confidant was in fact a Government informant. Third, Henry's incarceration imposed psychological pressures that rendered him "particularly susceptible to the ploys of undercover Government agents." *Id.*, at 274. We concluded that "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel." *Ibid.*

In *Maine* v. *Moulton*, 474 U. S. 159 (1985), we applied the analysis developed in *Henry* to a situation outside of the jailhouse setting. We held that Moulton's right to counsel was violated when the State made a deal with his codefendant in which the codefendant would surreptitiously record Moulton's statements in return for a favorable plea bargain. The State wired the codefendant when he attended an all-day meeting with Moulton, at Moulton's request, to plan their common defense. We rejected the argument that Moulton's initiation of the meeting exonerated the State from any wrongdoing. We held that "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." 474 U. S., at 176.

In *Kuhlmann* v. *Wilson*, 477 U. S. 436 (1986), decided the same Term as *Moulton*, we returned to the jailhouse setting. Wilson was incarcerated pending trial and placed in a cell with a prisoner who had previously agreed to act as a government informant. The State instructed the informant only to listen to Wilson's comments and not to ask any questions. The informant complied with this directive. We held that the informant in this case played the constitutionally permissible role of a mere "listening post." *Kuhlmann* v. *Wilson*, *supra*, at 456, n. 19. We found that this fact distinguished *Kuhlmann* from *Henry* and *Moulton*, concluding that

"the defendant must demonstrate that the police and their inform-
ant took some action, beyond merely listening, that was designed
deliberately to elicit incriminating remarks." 477 U. S., at 459.

In the instant case, the State of Florida, in opposition to the
petition for writ of certiorari, urges that the facts found by
the state court demonstrate that this case falls within *Kuhlmann's*
exception to the doctrine enunciated in *Henry* and *Moulton.* The
Florida Supreme Court found four facts on which it based its Sixth
Amendment holding. First, petitioner was "apparently eager to
talk" and initially approached Rewis to discuss the crime with him.
Second, Rewis approached the authorities on his own initiative.
Third, the authorities instructed Rewis not to question petitioner.
Fourth, Rewis was not promised any form of compensation for his
cooperation. See 503 So. 2d, at 314.

A careful reading of our precedents, however, demonstrates
that these facts do not suffice to shield the government from Sixth
Amendment challenge in this case. First, we explicitly rejected
in *Moulton* the notion that the defendant's initiation of contact
with the informant is relevant to the Sixth Amendment issue.
474 U. S., at 174–176. Second, the fact that Rewis initially
approached the authorities is insignificant given that the authori-
ties suggested that he be wired. In *Moulton,* we found it compel-
ling that "the police asked [the informant] to let them put a body
wire transmitter on him to record what was said." *Id.,* at 177.
Third, the mere fact that Rewis was *instructed* not to ask
petitioner questions cannot bring this case into the ambit of
*Kuhlmann,* because an identical instruction was given to the in-
formant in *Henry.* See *United States* v. *Henry, supra,* at 266.
What we found compelling in *Kuhlmann* was not merely that the
informant was instructed to remain silent, but that he actually did
so. It is undisputed in the instant case that Rewis asked peti-
tioner crucial questions concerning why he had killed Baughman
and how he felt about it. Pet. for Cert. 8. Finally, the lack
of monetary compensation offered Rewis cannot distinguish this
case from our contrary holdings. Although the informant in
*Henry* was paid a contingent fee, there is no suggestion that the
informant in *Moulton* was offered anything other than a favorable
plea bargain. The favorable sentencing treatment afforded Rewis
in this case is along much the same lines. In sum, none of the
facts found by the Florida court successfully distinguishes this
case from *Henry* and *Moulton.* As I read our precedents, *Kuhl-*

*mann* represents the only exception that we have yet recognized to the prohibition established in *Henry* and *Moulton*, and that exception may be invoked only in cases in which the informant can truly be described as a mere "listening post." This is not such a case.

### III

Although I think that the Florida Supreme Court misread our precedents in rejecting petitioner's Sixth Amendment claim, its error is one that is lamentably easy to make. Our precedents in this area involve several factual scenarios that vary only slightly. We have given little guidance on which factual variations are relevant to or dispositive of Sixth Amendment claims. We owe it to law enforcement officials and the courts to establish clearly the line across which constitutional error lies. For that reason, we should grant this petition for certiorari.