549 So.2d 171 (1989)
Kenneth Allen STEWART, Appellant,
v.
STATE of Florida, Appellant.
No. 70015.
Supreme Court of Florida.
August 31, 1989.
Rehearing Denied October 17, 1989.
*172 James Marion Moorman, Public Defender, and Douglas S. Connor, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellee.
SHAW, Justice.
This cause is before us on appeal from convictions and sentences of first-degree murder, attempted second-degree murder with a firearm, robbery with a firearm, and arson. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In April 1985, Michele Acosta and Mark Harris picked up appellant, Kenneth Stewart, while he was hitchhiking. When Acosta stopped to drop Stewart off, he struck her on the head with the butt of a gun and fired three shots, hitting Acosta in the shoulder and Harris in the spine. Stewart then forced Acosta and Harris from the car before driving off and picking up a friend, Terry Smith. The two removed items from the car's trunk and Stewart burned the car after telling Smith that the car belonged to a woman and man whom he had shot. Acosta recovered from her injuries; Harris later died.
Stewart was arrested and ultimately charged with first-degree murder, attempted first-degree murder, armed robbery, and arson. He consented to a search of his apartment, which yielded the items he and Smith had taken from Acosta's car. When shown a photopack display of suspects, Harris, who had not yet expired, and Acosta identified Stewart as the assailant. Acosta also identified Stewart in person at a preliminary hearing. While in jail, Stewart telephoned his grandparents. Detective Lease, who was visiting the grandparents, obtained their permission to secretly listen in on an extension. Via pretrial motions, Stewart sought to suppress the identifications made by Acosta and Harris, and the telephone conversation overheard by Lease. The court excluded the identification made by Harris, but ruled admissible both of Acosta's identifications and the telephone conversation.
During the culpability phase of the trial, the defense presented no evidence or testimony, conceding that Stewart had done the shooting but arguing that he was guilty of only second-degree murder or manslaughter. The jury found Stewart guilty of first-degree murder, attempted second-degree murder with a firearm, robbery with a firearm, and arson. The trial judge, following the jury's recommendation, sentenced Stewart to death on the murder charge, imposed two consecutive fifteen-year sentences for the attempted second-degree murder and arson convictions, and, departing from the sentencing guidelines, imposed a life sentence for the armed robbery.

TRIAL PHASE
The first point on appeal is that the telephone conversation between Stewart *173 and his grandmother should have been suppressed. Lease testified that during the conversation Stewart admitted shooting "that guy and the girl" and that his reason was "I guess to rob them." According to Stewart, the incriminating part of Lease's testimony was his admission that robbery had been his motive. He claims that had this statement been suppressed, the jury might have found him guilty only of second-degree murder. He asserts that admission of this testimony violated article I, section 12 of the Florida Constitution, which provides that persons have a right to be secure "against the unreasonable interception of private communications by any means." Unfortunately for Stewart, the same provision states that this right "shall be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court." In United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the Court ruled that no fourth amendment violation occurred where government agents testified at trial concerning a conversation they had monitored between the defendant and an informant wearing a warrantless bug. The passive role played by Detective Lease in the instant case with the consent of the grandparents is far less intrusive than that played by the government officers in White. We detect no article I, section 12 violation.
Stewart further claims that evidence of the conversation was obtained in violation of his sixth amendment right to counsel. He asserts that this right to counsel had attached at his first appearance hearing, which had been held two days earlier, and that Lease's actions violated United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). In Henry, the Court ruled that the right to counsel was violated where a cellmate was told not to question or initiate any conversation with Henry, who was represented by counsel, but merely to listen. The cellmate later testified in court as to what Henry said concerning details of the crime. Stewart's reliance on Henry is misplaced; there is a significant distinction. Henry's cellmate was acting as a government agent; he was a paid informant expressly commissioned to obtain incriminating evidence and to deceive Henry as to that purpose. No such encounter took place here. Stewart conversed only with his grandmother, not with a state agent. There was no point at which prosecution and accused interacted. The right enunciated in Henry applies only during significant encounters between prosecution and accused. See United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Stewart's argument that his fifth amendment rights were violated under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is equally unpersuasive. Suffice it to say that Miranda warnings are required to combat the "inherently compelling pressures" of "in-custody interrogation." Id. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. No such interrogation occurred here.
Stewart next argues that his legs should not have been shackled during the guilt and sentencing phases of the trial. The initial in-court exchange concerning shackles took place prior to jury selection:
THE COURT: It has been requested by defense counsel that his client's leg shackles be removed. I have, apparently, the defendant has complained that they are too tight. I have had Mr. Morone check those.
Mr. Morone, how tight are those ankle shackles?
THE BAILIFF: I can pass my fingers down between his shackles and legs. I have very large fingers.
... .
MR. BARBAS: It gives a false impression to the jury that, in fact, he is already under some type sentence, is another reason.
THE COURT: I disagree that it gives a false impression he is under sentence. I think the fewer comments made is the better procedure here. The Court has had problems with this particular defendant in the past, where there has been *174 allegations he may attempt to run. I am having him shackled in the courtroom.
MR. SKYE: Maybe it would not bring more attention if you didn't ask him to stand, like you normally do.
THE COURT: I would prefer to have him standing. His feet are wide enough apart. If they are going to see them, they are going to see them.
MR. BARBAS: Yes sir.
Later, on Stewart's motion for a new trial, the court, after hearing argument from both sides, ruled that the shackles were both unobtrusive and necessary. The judge pointed out that Stewart had remained stationary during the trial, thus giving the jury no opportunity to see him walk in shackles, and that the shackles were barely visible under the table. The judge was also aware that Stewart had on a previous occasion slipped off his manacles, and was facing charges of escape and attempted escape. The judge therefore had reason to believe that Stewart was a high risk prisoner who had previously tried to escape and thus presented a security risk. Though we recognize that shackling is an "inherently prejudicial practice," Holbrook v. Flynn, 475 U.S. 560, 568, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525, 534 (1986), the trial court, in this instance, properly exercised its discretion to ensure the security and safety of the proceeding.

SENTENCING PHASE
During the penalty phase, judgments that had been rendered against Stewart in the trial phase were entered into evidence by the state. The bailiff testified for the state, stating that he had placed Stewart's fingerprints on the documents and that Stewart was the same person who had been adjudged guilty of the offenses. Stewart contends that this link between prosecution and bailiff prejudiced the jury. We disagree. No prejudice results when a court officer serves as a witness for the state in a nonmaterial matter. See Rhone v. State, 93 So.2d 80 (Fla. 1957).
The trial court refused to give one of Stewart's requested special jury instructions which stated that
no defendant can be sentenced to death unless aggravating circumstances outweigh the mitigating circumstances.
Stewart asked that this language be substituted for the appropriate standard jury instruction in three places, replacing wording which directs the jury to determine whether mitigating circumstances outweigh aggravating circumstances. See Fla.Std.Jury Instr. (Crim.) 78-80 (1981). We have previously considered and rejected this argument. Arango v. State, 411 So.2d 172 (Fla.), cert. denied, 457 U.S. 1140, 102 S.Ct. 2973, 73 L.Ed.2d 1360 (1982).
The trial court properly rejected Stewart's confusing request that the jury be instructed on all possible aggravating factors so that he could argue that the absence of many of these factors was a reason for imposing a lesser sentence. Florida Standard Jury Instructions state that the jury be instructed only on those factors for which evidence has been presented. Fla.Std.Jury Instr. (Crim.) 78 (1981).
Stewart's stepfather, Bruce Scarpo, was not allowed to testify in mitigation as to what six-year-old Stewart had told Scarpo about being mistreated by his mother's boyfriend. We conclude that the trial court erred when it excluded this testimony as hearsay. The exclusionary rules of evidence are inapplicable to sentencing proceedings in capital cases except where failure to apply the rules would result in a violation of the state or federal constitution. We find no such violation in this instance. § 921.141(1), Fla. Stat. (1985). However, the essence of this excluded testimony  beatings and being forced to stand in the corner  did ultimately reach the jury via Scarpo's later testimony.[1] Additionally, *175 the defense expert, Dr. Afield, later testified at length as to the deprived and abusive nature of Stewart's early years and the traumatic effect that this had on his development. Because of the cumulative nature of the excluded testimony, the trial court's error here was harmless.
Stewart claims that Harris' father should not have been allowed to address the judge during sentencing. In Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the United States Supreme Court ruled that victim impact evidence cannot be presented to a capital sentencing jury. We subsequently held in Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), that this proscription applied to all aspects of sentencing in death cases, and that a contemporaneous objection is necessary to preserve this point for review on appeal. In Grossman, we noted that:
There is nothing in the Booth opinion which suggests that it should be retroactively applied to the cases in which victim impact evidence has been received without objection.
Id. at 842. Because Stewart failed to object below, he is procedurally barred from raising this issue now.
The jury was instructed that "[t]he punishment for this crime is either death or life imprisonment without the possibility of parole for twenty-five years." Stewart argues that the sentencing guidelines eliminated parole for all crimes, including capital felonies, committed after October 1, 1983, and that the jury should have been instructed that if he were sentenced to life imprisonment, he would never be eligible for parole. We disagree. In implementing the sentencing guidelines, the legislature provided that:
The guidelines shall be applied to all felonies, except capital felonies, committed on or after October 1, 1983, and to all felonies, except capital felonies and life felonies, committed prior to October 1, 1983, for which sentencing occurs after such date when the defendant affirmatively selects to be sentenced pursuant to the provisions of this act.
§ 921.001(4)(a), Fla. Stat. (1983). It further stated that:
A person convicted of crimes committed on or after October 1, 1983, or any other person sentenced pursuant to sentencing guidelines adopted under this section shall be released from incarceration only:
(a) Upon expiration of his sentence;
(b) Upon expiration of his sentence as reduced by accumulated gain-time; or
(c) As directed by an executive order granting clemency.
The provisions of chapter 947 [parole] shall not be applied to such person.
§ 921.001(8), Fla. Stat. (1983).[2] Both these provisions are contained in section 921.001, entitled "Sentencing Commission," and the language in subsection (8) concerning parole is limited to those crimes embraced within the guidelines. Cf. Harvey v. State, 529 So.2d 1083 (Fla. 1988).
Stewart asserts that the legislature's intention to include non-guidelines crimes in the prohibition of parole was demonstrated in chapter 85-288, section 25, Laws of Florida. This section concerns sentences imposed under the Florida Youthful Offender Act, chapter 958, Florida Statutes, and provides in part:
Section 25. The intent of the Legislature in the amendment to s. 921.001(8), Florida Statutes, pursuant to chapter 83-87, Laws of Florida, was to exempt from the provisions of chapter 947, Florida Statutes, every person convicted of crimes committed on or after October 1, 1983, or any other person sentenced pursuant to sentencing guidelines, including persons sentenced under the provisions of chapter 958, Florida Statutes.
*176 He claims that when this law was passed in 1985, youthful offenders were not subject to guidelines sentencing. We disagree. Youthful offenders have been subject to guidelines sentencing since July 1, 1984. See E.W. v. State, 469 So.2d 914 (Fla.1st DCA 1985).
We note that when the legislature amended chapter 921 in 1983 to exclude capital felonies from guidelines sentencing, it left unchanged, and has not since altered, the penalty provision for such crimes. This is a strong indication that parole remains a viable option:
775.082 Penalties. 
(1) A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole unless the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, and in the latter event such person shall be punished by death.
§ 775.082, Fla. Stat. (1981). Based upon the foregoing, we conclude that section 921.001(8) prohibits parole eligibility only for those offenders sentenced pursuant to the guidelines.[3] We find no error in the jury instruction which correctly stated the law.
The trial court committed error in failing to provide written findings in support of its imposition of the death penalty. Section 921.141(3), Florida Statutes (1985), requires that the court make such findings in writing.[4] Though the trial court here did dictate these findings into the record at the time of sentencing, no separate written findings are contained in the record on appeal. We note that this case differs from our decision in Van Royal v. State, 497 So.2d 625 (Fla. 1986), wherein we vacated the death sentence and remanded for imposition of a life sentence. There, the judge overrode the jury recommendation and made no findings at all  oral or written  in the record. Here, the judge followed the jury recommendation and made detailed oral findings. Prior to, or contemporaneously with, orally pronouncing a death sentence, courts now are required to prepare a written order which must be filed concurrent with the pronouncement. Grossman, 525 So.2d at 841. Should a trial court fail to provide timely written findings in a sentencing proceeding taking place after our decision in Grossman, we are compelled to remand for imposition of a life sentence. Because Stewart's sentencing occurred prior to Grossman and because the trial court followed the jury recommendation of death and dictated its findings *177 into the record, we remand for written findings. Cave v. State, 445 So.2d 341 (Fla. 1984).
Stewart's last point is that the trial court erred by failing to give written reasons for departing from the guidelines where it imposed life imprisonment on the attempted murder count. We agree. When the court imposed the life term, it departed from the guidelines range of twenty-seven to forty years. It stated its reasons orally at sentencing:
I believe under circumstances and for the reasons that even the psychiatrist, if I am correct, as I recall brought to this courtroom by the defense, Doctor Afield, indicated that the Defendant is beyond rehabilitation and incapable of rehabilitation. I do agree that the Defendant was on some form of crime spree and for those reasons, I am going to aggravate sentence to life imprisonment, consecutive to any life imprisonment that may occur in cases 85-6667 or 85-4825, if the Defendant's sentences are vacated and receives life imprisonment.
Reasons for departure must be in writing. State v. Jackson, 478 So.2d 1054 (Fla. 1985). Where, as here, the trial court fails to give written reasons for departure, the case must be remanded so that written reasons may be provided.
Accordingly, we affirm the convictions and the two fifteen-year sentences. We reverse the life sentence and remand for resentencing. As to the death sentence, we temporarily remand so that the trial court can provide written findings.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, concurring in part, dissenting in part.
I concur in the conviction, but dissent as to the sentence. In this case we again must face a death penalty imposed in the absence of contemporaneous written findings, as required by section 921.141(3), Florida Statutes (1985). That statute states in pertinent part:
In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the [weighing of aggravating and mitigating] circumstances ... and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment.

... .
(Emphasis added.) I fail to see how a trial court can comply with this specific statutory language if it enters no written findings at the time sentence is imposed. The statute clearly contemplates that the written findings must accompany sentencing.
Because of a terrible fact situation in Muehleman v. State, 503 So.2d 310, 317 (Fla.), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987), we attempted to loosen the statutory requirement slightly. That slight aperture is now a wide open door and this Court is continually receiving appeals in which trial judges have failed to comply with this requirement.
I now believe we were wrong in Muehleman. I accordingly would hold that when written findings supporting the death penalty are not entered at sentencing, the death penalty statute requires that the sentence automatically be reduced to life in prison. This, I believe, is the only way to honor the letter of the law and to require *178 trial courts to comply with the proper procedures. While the result may be the imposition of life in cases in which death otherwise would be appropriate, this was the intent of the legislature and the only way the Court can properly police the statutory requirements.
Moreover, it is absurd to establish an inflexible rule requiring written findings for departure sentences in the sentencing guidelines context, see State v. Jackson, 478 So.2d 1054 (Fla. 1985), receded from on other grounds, Wilkerson v. State, 513 So.2d 664 (Fla. 1987), while permitting much greater laxness in the context of the imposition of the death penalty. Surely the greatest of society's criminal sanctions deserves at least as much procedural vigilance as the least.
KOGAN, J., concurs.
NOTES
[1] When subsequently asked by defense counsel what Stewart had been like when he had first come to live with Scarpo, Scarpo replied:

At this juncture in his life when he would do something mischievous, he would ask me, "Are you going to make me stand in the corner?"
"Are you going to beat my back?"
[2] The content of this subsection has been recodified at subsections 921.001(10) and (11), Florida Statutes (Supp. 1988).
[3] See Gresham v. State, 506 So.2d 41 (Fla. 2d DCA), cause dismissed, 509 So.2d 1117 (Fla. 1987). But see Davis v. State, 511 So.2d 430 (Fla. 2d DCA 1987). Contra 1984 Op. Att'y Gen. Fla. 84-5 (Jan. 20, 1984).
[4] See generally Grossman v. State, 525 So.2d 833 (Fla. 1988) (no resentencing required where jury recommendation followed, and written findings made prior to certification of record on appeal), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); Patterson v. State, 513 So.2d 1257 (Fla. 1987) (resentencing required where jury recommendation followed, written findings prepared by state attorney, and no oral findings in record); Nibert v. State, 508 So.2d 1 (Fla. 1987) (no resentencing where jury recommendation followed, written findings prepared by state attorney, and oral findings made in record); Muehleman v. State, 503 So.2d 310 (Fla.) (no resentencing where jury recommendation followed, and written findings made prior to certification of record), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987); Van Royal v. State, 497 So.2d 625 (Fla. 1986) (life sentence required on remand where jury recommendation not followed, no written findings made prior to certification, and no oral findings made in record); Cave v. State, 445 So.2d 341 (Fla. 1984) (remand so record can be supplemented with written findings where jury recommendation followed, and oral reasons present in record); Ferguson v. State, 417 So.2d 639 (Fla. 1982) (no resentencing where jury recommendation followed, and written findings made prior to certification of record); Thompson v. State, 328 So.2d 1 (Fla. 1976) (no resentencing where jury recommendation not followed, and oral reasons dictated into record).