614 So.2d 473 (1993)
Freddie Lee HALL, Appellant,
v.
STATE of Florida, Appellee.
No. 77563.
Supreme Court of Florida.
January 14, 1993.
Rehearing Denied March 22, 1993.
*475 James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Freddie Lee Hall appeals the sentence of death imposed on him on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm Hall's sentence.
In February 1978 Hall and Mack Ruffin decided to steal a car to use in a robbery. Spotting a twenty-one-year-old housewife, who was seven months pregnant, in a grocery store parking lot, Hall forced her into her car and drove that car to a secluded wooded area. Ruffin followed in his car. After reaching their destination, both men raped the victim, after which she was beaten and shot and her body dragged further into the woods. Later that day, they drove the victim's car to a convenience store where they killed a deputy sheriff. The handgun shown to have killed the female victim was found under the deputy's body.
In separate trials their juries convicted both Hall and Ruffin of first-degree murder and recommended that they be sentenced to death, which their trial judges did.[1] This Court affirmed Hall's conviction and sentence. Hall v. State, 403 So.2d 1321 (Fla. 1981). Later, however, this Court ordered that Hall be resentenced because of error under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Hall v. State, 541 So.2d 1125 (Fla. 1989).
At the resentencing the state produced witnesses and prior testimony to make the jury aware of the underlying facts and to prove aggravators. Hall presented numerous witnesses, including, among others, his original trial and appellate attorneys, two sisters, two brothers, three other family members and acquaintances, a professor of special education, a psychiatrist, a psychologist, and a criminologist in his attempt to establish mitigators. The jury, however, recommended that he be sentenced to death, which the trial court did.
Each side started voir dire with ten peremptory challenges, and Hall eventually used his last peremptory to remove a prospective juror that the court refused to remove for cause. Claiming that there was one more person on the panel that he would excuse, Hall asked for more challenges. The court said that the last person Hall challenged was at least arguable as to removal for cause and gave him one more challenge, which Hall used. After the state struck another prospective juror, Hall *476 asked for still more challenges because he did not want Cavanaugh, the last person called to the panel, on the jury. The state objected that granting more challenges in a piecemeal fashion was unfair to the state, and the court refused any more challenges. Hall did not challenge Cavanaugh for cause, but moved for a mistrial because the court refused to give him more challenges. He had no authority to cite for this claim, and the state argued that granting more challenges was within the court's discretion. The court agreed and denied the motion. Now, Hall argues that because Cavanaugh had been exposed to prejudicial publicity and juror misbehavior the court erred in refusing him an additional peremptory challenge. We disagree.
"To show reversible error, a defendant must show that all peremptories had been exhausted and that an objectionable juror had to be accepted." Pentecost v. State, 545 So.2d 861, 863 n. 1 (Fla. 1989); Trotter v. State, 576 So.2d 691 (Fla. 1990). Although Hall claimed that he would have excused Cavanaugh, the record discloses that, even though Cavanaugh had seen a newspaper headline about Hall's resentencing, he did not read the article and that Cavanaugh did not hear what some jurors were talking about in the hallway. We have previously held that the competency of a challenged juror is a mixed question of law and fact, the resolution of which is within the trial court's discretion. Singer v. State, 109 So.2d 7 (Fla. 1959). Hall has shown no abuse of discretion in the trial court's refusal to grant him more peremptory challenges, and there is no merit to this issue.
Hall filed a lengthy proposed instruction to explain why he was being resentenced. The state objected that the explanation was irrelevant and confusing, and the court refused to give the proposed instruction. "Jury instructions must relate to issues concerning evidence received at trial", and confusing, contradictory, or misleading instructions should not be given. Butler v. State, 493 So.2d 451, 452 (Fla. 1986). Hall has shown no abuse of discretion in the court's refusal to give the proposed instruction, and this issue has no merit.
The state tried Hall and Ruffin together for the deputy's murder. The jury convicted each of first-degree murder and recommended that Ruffin be sentenced to life imprisonment and that Hall be sentenced to death, and the trial court agreed with those recommendations. On appeal the district court affirmed Ruffin's conviction of first-degree murder. Ruffin v. State, 390 So.2d 841 (Fla. 5th DCA 1980). In considering Hall's appeal of his conviction and death sentence, however, this Court vacated the sentence and reduced Hall's conviction to second-degree murder because, although both Hall and Ruffin were guilty of murder, premeditated, first-degree murder had not been proved. Hall v. State, 403 So.2d 1319 (Fla. 1981).
At resentencing Hall sought to introduce Ruffin's conviction of first-degree murder to contrast with his own second-degree murder conviction. The state objected and argued that if this were allowed it should be allowed to explain the differences in the codefendants' convictions. The judge held that he would allow both sides to argue the significance of Ruffin's conviction, and Hall decided not to introduce that conviction. Now, Hall argues that the court erred in refusing to let him introduce the conviction without the state being able to explain it.
We find no merit to Hall's argument. If Ruffin's conviction for murdering the deputy had come to this Court, no doubt it, as well as Hall's, would have been reduced to second-degree murder. See Moreland v. State, 582 So.2d 618 (Fla. 1991). The admitting of evidence is within the trial court's discretion. Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). Hall has demonstrated no abuse of discretion in the trial court's ruling that the state would be able to explain Ruffin's conviction.
As stated earlier, seven of Hall's relatives and friends testified on his behalf. When he sought to introduce testimony *477 from four other relatives, the state objected to their testimony as being cumulative, repetitious, and redundant. The parties then stipulated that the jury would be told that these witnesses "would have testified to the same factual circumstances that other family witnesses have testified to." It is within the trial court's discretion to exclude cumulative evidence. Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987). Hall has shown no abuse of discretion, and there is no merit to his argument that the court erred in excluding this testimony.
As noted earlier, Hall's jury recommended that he be sentenced to death. In agreeing with that recommendation the court wrote: "It is only in rare circumstances that this court could impose a sentence other than what is recommended by the jury, although the court obviously has the right, in appropriate circumstances, to exercise its prerogative of judicial override." Hall now argues that the "rare circumstances" language shows that the court used the wrong standard in considering the jury's recommendation. We disagree. As we have stated previously: "Notwithstanding the jury recommendation ... the judge is required to make an independent determination, based on the aggravating and mitigating factors." Grossman v. State, 525 So.2d 833, 840 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). This judge recognized that the final decision as to penalty was his and conscientiously weighed and discussed the aggravating and mitigating evidence and made his decision based on the evidence. We are convinced that he applied the proper standard.
In sentencing Hall to death the court found that seven aggravators had been established: 1) previous conviction of violent felony (assault with intent to commit rape, second-degree murder, shooting at or into an occupied vehicle); 2) under sentence of imprisonment (on parole for the assault conviction); 3) committed during the commission of kidnapping and sexual battery; 4) committed for pecuniary gain (stealing the victim's car); 5) heinous, atrocious, or cruel; 6) cold, calculated, and premeditated; and 7) committed to avoid or prevent arrest. Because his original sentencing judge found only three aggravators, Hall now argues that the resentencing court could not find the additional four. We recently considered this issue and, contrary to Hall's argument, held that, because a resentencing is a totally new proceeding, the resentencing court is not bound by the original court's findings. Preston v. State, 607 So.2d 404 (Fla. 1992). Thus, there is no merit to Hall's argument.
Hall also argues that the state did not prove the avoid, prevent arrest and cold, calculated, and premeditated aggravators.[2] We disagree. We have long held that, when the victim is not a law enforcement officer, eliminating a witness must be the dominant motive for the murder to support finding the avoid, prevent arrest aggravator. E.g., Bates v. State, 465 So.2d 490 (Fla. 1985). Circumstantial evidence can be used to prove this aggravator, and we have uniformly upheld finding this aggravator when the victim is transported to another location and then killed. E.g., Preston; Swafford v. State, 533 So.2d 270 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989); Engle v. State, 510 So.2d 881 (Fla. 1987), cert. denied, 485 U.S. 924, 108 S.Ct. 1094, 99 L.Ed.2d 256 (1988); Cave v. State, 476 So.2d 180 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); Copeland v. State, 457 So.2d 1012 (Fla. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985); Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). Here, the evidence leaves no reasonable inference except that Hall and Ruffin killed the victim to eliminate the only witness to their having kidnapped *478 and raped her and having stolen her car.[3]
The evidence also supports finding the murder to have been committed in a cold, calculated, and premeditated manner with no pretense of moral or legal justification. The record shows that Hall and Ruffin intended to steal the victim's car. To that end, they could have taken the car and simply left her in the parking lot. Instead, however, they abducted, raped, beat, and finally killed her. Even if Hall did not fire the shot that killed the victim, he was a willing if not predominant participant in the other acts. Copeland; Cave. The totality of the circumstances show this murder to have been committed in a cold, calculated, and premeditated manner. There is no merit to Hall's argument that his mental retardation provided a pretense of moral or legal justification. Cf. Jones v. State, 612 So.2d 1370 (Fla. 1992) (sense of rejection does not provide a valid pretense); Williamson v. State, 511 So.2d 289 (Fla. 1987) (no pretense of justification where victim had not threatened defendant), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). Additionally, it is not improper to apply this aggravator to killings committed before the legislature adopted it. Sireci v. State, 587 So.2d 450 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992).
We also find no merit to Hall's contention that the heinous, atrocious, or cruel aggravator is unconstitutionally vague.[4] In Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), the United States Supreme Court declared our former instruction[5] on this aggravator invalid. Hall's trial judge, however, gave his jury the new instruction as follows:
Six, the crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means that designed to inflict a high degree of pain with utter indifference to, or even enjoyment of the suffering of others. The kind of crime intended to be included as heinous, atrocious, or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to the victim.
This instruction defines the terms sufficiently to save both the instruction and the aggravator from vagueness challenges.
Hall also attacks the trial judge's findings in regards to the mitigating evidence. We disagree that the judge committed reversible error or that death is disproportionate for this killing. The judge considered four statutory mitigators and more than twenty items of nonstatutory mitigating evidence grouped into three general areas, i.e., mental, emotional, and learning disabilities; abused and deprived childhood; and disparate treatment of co-perpetrator. Although the judge initially stated that some of the mitigating evidence was "unquantifiable," he later spent almost six pages analyzing the mitigating evidence and concluded that whatever mitigators had been established did not outweigh the aggravators.
In considering allegedly mitigating evidence the court must decide if "the facts alleged in mitigation are supported by the evidence," if those established facts are "capable of mitigating the defendant's punishment, i.e., ... may be considered as extenuating or reducing the degree of moral culpability for the crime *479 committed", and if "they are of sufficient weight to counterbalance the aggravating factors." Rogers v. State, 511 So.2d 526, 534 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988); Campbell v. State, 571 So.2d 415 (Fla. 1990). "The decision as to whether a mitigating circumstance has been established is within the trial court's discretion." Preston, 607 So.2d at 412. The judge carefully and conscientiously applied the Rogers standard and resolved the conflicts in the evidence, as was his responsibility. Gunsby v. State, 574 So.2d 1085 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 136, 116 L.Ed.2d 103 (1991). The record supports his conclusion that the mitigators either had not been established or were entitled to little weight. Preston; Ponticelli v. State, 593 So.2d 483 (Fla. 1991), vacated on other grounds, ___ U.S. ___, 113 S.Ct. 32, 121 L.Ed.2d 5 (1992).
We also reject Hall's claim that his death sentence is not proportionate. These crimes were a joint operation, with each defendant responsible for the other's acts. James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984). Even though Ruffin received a life sentence, the different treatment given Hall is appropriate. As noted by the trial judge, Hall was bigger and older than Ruffin and was the leader. Before the date of this crime he had been convicted of a violent crime and was on parole, whereas Ruffin had no such criminal history. Also, Ruffin's resentencing jury recommended that he be sentenced to life imprisonment. Hall, on the other hand, has received a death recommendation from every jury he has appeared before. The disparate treatment is fully warranted.[6] The aggravators clearly outweigh the mitigating evidence, and this cruel, cold-blooded murder clearly falls within the class of killings for which the death penalty is properly imposed. E.g., Swafford (victim abducted, raped, and killed); Engle (same); Cave (co-perpetrators abducted, raped, and killed victim; defendant not actual killer); Copeland (same).
Therefore, we affirm the death sentence imposed on Hall on resentencing.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Chief Justice, dissenting.
I cannot agree with the majority's conclusions regarding Freddie Lee Hall's sentence. Specifically, I cannot agree that "the record supports [the trial judge's] conclusion that the mitigators either had not been established or were entitled to little weight." Majority op. at 479.
The testimony reflects that Hall has an IQ of 60; he suffers from organic brain damage, chronic psychosis, a speech impediment, and a learning disability; he is functionally illiterate; and he has a short-term memory equivalent to that of a first grader. The defense's four expert witnesses who testified regarding Hall's mental condition stated that his handicaps would have affected him at the time of the crime. As the trial judge noted in the resentencing order, Freddie Lee Hall was "raised under the most horrible family circumstances imaginable."
Indeed, the trial judge found that Hall had established substantial mitigation. The judge wrote that the evidence conclusively demonstrated that Hall "may have been suffering from mental and emotional disturbances and may have been, to some extent, unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Additionally, the judge found that Hall suffers from organic brain damage, has been mentally retarded all of his life, suffers from mental illness, suffered tremendous emotional deprivation and disturbances throughout his life, suffered tremendous physical abuse and torture as a child, and has learning *480 disabilities and a distinct speech impediment that adversely affected his development.
Hall's mental deficiency as an adult is not surprising. The sixteenth of seventeen children, Hall was tortured by his mother and abused by neighbors. Various relatives testified that Hall's mother tied him in a "croaker" sack, swung it over a fire, and beat him; buried him in the sand up to his neck to "strengthen his legs"; tied his hands to a rope that was attached to a ceiling beam and beat him while he was naked; locked him in a smokehouse for long intervals; and held a gun on Hall and his siblings while she poked them with sticks. Hall's mother withheld food from her children because she believed a famine was imminent, and she allowed neighbors to punish Hall by forcing him to stay underneath a bed for an entire day.
Hall's school records reflect his mental deficiencies. His teachers in the fourth, sixth, seventh, and eighth grades described him as mentally retarded. His fifth grade teacher stated that he was mentally malad-justed, and still another teacher wrote that "his mental maturity is far below his chronological age."
The U.S. Supreme Court has expressed the view that the Eighth Amendment does not categorically prohibit execution of the mentally retarded. Penry v. Lynaugh, 492 U.S. 302, 340, 109 S.Ct. 2934, 2958, 106 L.Ed.2d 256 (1989). Nonetheless, the Court noted in Penry that "evolving standards of decency that mark the progress of a maturing society" may ultimately lead to a national consensus against executing the mentally retarded. Id.; see Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). Since Penry was decided, Kentucky, Maryland, New Mexico, and Tennessee have passed legislation exempting mentally retarded people from the death penalty. See V. Stephen Cohen, Comment, Exempting the Mentally Retarded from the Death Penalty: A Comment on Florida's Proposed Legislation, 19 Fla.St.U.L.Rev. 457, 468 (1991). Additionally, the Georgia Supreme Court has found that execution of the mentally retarded violates its state constitutional provision against cruel and unusual punishment. Fleming v. Zant, 259 Ga. 687, 386 S.E.2d 339 (1989). The Georgia court wrote:
The "standard of decency" that is relevant to the interpretation of the prohibition against cruel and unusual punishment found in the Georgia Constitution is the standard of the people of Georgia, not the national standard. Federal constitutional standards represent the minimum, not the maximum, protection that this state must afford its citizens. Thus, although the rest of the nation might not agree, under the Georgia Constitution, the execution of the mentally retarded constitutes cruel and unusual punishment.
Id. 386 S.E.2d at 342 (citation omitted).[7]
Floridians' attitudes toward the mentally retarded have evolved significantly in recent decades. Those mentally retarded people committed to state care no longer are warehoused in "training centers," and a variety of procedural safeguards have been enacted to protect the rights of those committed to state facilities. See § 393.11, Fla. Stat. (1991) (regulating involuntary admission of the mentally retarded to state residential services); see also David A. Davis, Executing the Mentally Retarded, Fla.Bar.J., February 1991, at 13, 15 (discussing generally how statutes have changed to reflect a more enlightened approach to caring for the mentally retarded).
Society has developed a greater understanding of mental retardation. It is generally recognized now that mental retardation is a permanent learning disability that manifests itself in several predictable ways, including poor communication skills, short memory, short attention span, and *481 immature or incomplete concepts of blame-worthiness and causation. Davis, Fla.Bar J. at 13; see also James W. Ellis & Ruth A. Luckasson, Mentally Retarded Criminal Defendants, 53 Geo.Wash.L.Rev. 414, 417 (1985); John Blume & David Bruck, Sentencing the Mentally Retarded to Death: An Eighth Amendment Analysis, 41 Ark. L.Rev. 725, 732-34 (1988). A person who is mentally retarded is not just "slower" than the average person. Mental retardation is "a severe and permanent mental impairment that affects almost every aspect of a mentally retarded person's life." Blume & Bruck, 41 Ark.L.Rev. at 734.
It would appear that the trial judge did not understand the nature of mental retardation. Otherwise, he could not have reached the conclusion that the mitigating factors were entitled to little weight because he could not "definitely establish that they affected Hall at the time of the crime."
This Court has not addressed whether executing the mentally retarded is cruel or unusual punishment under article I, section 17 of the Florida Constitution. I believe it is appropriate to analyze whether imposition of capital punishment in such circumstances is either "cruel" or "unusual."[8] First, because a mentally retarded person such as Freddie Lee Hall has a lessened ability to determine right from wrong and to appreciate the consequences of his behavior, imposition of the death penalty is excessive in relation to the crime committed. Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). As Justice Brennan noted in Furman v. Georgia, 408 U.S. 238, 257, 92 S.Ct. 2726, 2736, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring), a punishment is excessive when it is unnecessary. An excessive punishment "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering." Coker, 433 U.S. at 592, 97 S.Ct. at 2866 (discussing Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). I believe imposing the death penalty on mentally retarded defendants is excessive, serves no purpose except to dispose of those some might deem to be "unacceptable members" of society, and therefore, is "cruel."
Second, executing a mentally retarded defendant such as Hall is "unusual" because it is disproportionate. Because mentally retarded individuals are not as culpable as other criminal defendants, I would find that the death penalty is always disproportionate when the defendant is proven to be retarded. However, even without a per se rule, Hall's mental retardation and his horrible childhood represent substantial mitigation, which makes the death penalty disproportionate despite the existence of several aggravating factors. See, e.g., Nibert v. State, 574 So.2d 1059, 1063 (Fla. 1990); Smalley v. State, 546 So.2d 720 (Fla. 1989); Blakely v. State, 561 So.2d 560 (Fla. 1990). This case is illustrative of far too many cases we see at this Court; horrible crimes are repeatedly committed by those who endure sickening abuse and deprivation as children. Many, like Freddie Lee Hall, are also mentally retarded and suffer particularly severe abuse because their parents do not understand the nature of retardation. The connection between an individual's childhood and his or her later ability to function as a productive member of society is obvious to those of us who routinely review criminal cases, and while a tragic childhood and mental retardation do not "excuse" later criminal behavior, they do reflect on an individual's culpability.
The law requires that the death penalty be reserved for the most heinous of crimes and the most culpable of murderers. See, e.g., Songer v. State, 544 So.2d 1010, 1011 (Fla. 1989); State v. Dixon, 283 So.2d 1, 8 (1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The crime committed in this case undoubtedly was heinous. A young woman, seven months pregnant, was raped, beaten, and shot to death. The horrible nature of this crime is *482 uncontroverted, and it is certainly among the types of offenses for which the death penalty may be imposed. However, Freddie Lee Hall is not among the most culpable of murderers. Hall's judgment, thought processes, and actions are unquestionably affected by his mental retardation. He cannot understand right from wrong in the way that most members of our society do, and while he should spend the rest of his life in prison, he should not be executed.
In evaluating both the "cruel" and "unusual" punishment prohibitions of article I, section 17 and the evolving standards of decency in Florida regarding the mentally retarded, I find that executing the mentally retarded violates the state constitution. Consequently, I would remand Hall's case for imposition of a sentence of life imprisonment.
KOGAN, J., concurs.
NOTES
[1] We affirmed Ruffin's conviction and sentence. Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). A federal court granted Ruffin a resentencing based on Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Ruffin v. Dugger, 848 F.2d 1512 (11th Cir.1988), cert. denied, 488 U.S. 1044, 109 S.Ct. 872, 102 L.Ed.2d 995 (1989). At resentencing Ruffin's jury recommended life imprisonment, which the trial court imposed. Ruffin v. State, 589 So.2d 403 (Fla. 5th DCA 1991).
[2] Hall does not challenge the applicability of the five other aggravators, and our review of the record shows them to have been established beyond a reasonable doubt.
[3] Even if we were to hold that this aggravator should not have been found, given the strong remaining aggravators, any error would be harmless.
[4] We have previously rejected Hall's constitutional claims or claims very similar to them. E.g., Ragsdale v. State, 609 So.2d 10 (Fla. 1992); Sireci v. State, 587 So.2d 450 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992); Jones v. State, 569 So.2d 1234 (Fla. 1990); Hitchcock v. State, 578 So.2d 685 (Fla. 1990), vacated on other grounds, ___ U.S. ___, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); Eutzy v. State, 541 So.2d 1143 (Fla. 1989).
[5] Formerly, the instructions listed this aggravator as "especially wicked, evil, atrocious or cruel" without defining any of those terms.
[6] Scott v. Dugger, 604 So.2d 465 (Fla. 1992), is factually distinguishable and, therefore, no basis for relief.
[7] In determining its state standards of decency, the Georgia court relied in part on a prospective legislative enactment that was passed after the trial of the defendant. Fleming v. Zant, 386 S.E.2d 339, 342 (Ga. 1989). The Georgia statute was a response to public outrage over the 1986 execution of Jerome Bowden, a mentally retarded man with an IQ of 59. V. Stephen Cohen, Comment, Exempting the Mentally Retarded from the Death Penalty: A Comment on Florida's Proposed Legislation, 19 Fla.St.U.L.Rev. 457, 468 n. 117 (1991).
[8] Unlike the Eighth Amendment, which prohibits cruel and unusual punishment, article I, section 17 prohibits cruel or unusual punishment. The use of the disjunctive indicates that alternatives were intended. Tillman v. State, 591 So.2d 167, 168 n. 2 (Fla. 1991).