626 So.2d 1310 (1993)
James Patrick BONIFAY, Appellant,
v.
STATE of Florida, Appellee.
No. 78724.
Supreme Court of Florida.
September 2, 1993.
Rehearing Denied December 14, 1993.
*1311 Peter W. Mitchell, Court-Appointed Atty., Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
James Patrick Bonifay appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the conviction, but vacate the sentence and remand for resentencing.
In March 1990 Robin Archer was fired from his job in an auto parts store. The following January he convinced his seventeen-year-old cousin, Pat Bonifay, to kill the clerk he apparently blamed for having him fired. Archer told Bonifay to rob the store to cover up the motive for the killing and also told him to wear a ski mask and gloves and where the cash boxes and an emergency exit were located. Bonifay asked a friend, Kelly Bland, if he could borrow a handgun. Bonifay was not home when Bland brought the gun, so Bland gave it to Archer who, in turn, gave it to Bonifay.
Bonifay enlisted two other friends, Cliff Barth and Eddie Fordham, to help him, and the trio went to the parts store just before midnight on Friday, January 24, 1991. Bonifay approached the night parts window and asked the clerk for some parts. He could not go through with the plan, however, and they left. The following morning Archer got on to Bonifay about not killing the clerk, and the trio went back to the parts store that night. A different clerk was working that night, and Bonifay and Barth each shot him once in the body from outside the store. They then crawled into the store through the parts window and broke open the cash boxes that Archer had told Bonifay about. During this time, the victim was lying on the floor begging for his life and talking about his wife and children. Bonifay told him to shut up and shot him twice in the head. Bonifay and Barth then left the building and split the stolen cash with Fordham. The next day Archer refused to pay Bonifay because he killed the wrong person.
Bonifay later confessed at different times to Bland and Bland's friend, Jennifer Tatum. Tatum informed the authorities, which led to the arrest of Bonifay, Archer, Barth, and Fordham. A jury convicted Bonifay of first-degree murder, armed robbery, and grand theft and, after the penalty phase, recommended that he be sentenced to death, which *1312 the trial court did.[*]
Deputies arrested Bonifay at his night school and took him to the sheriff's office where he confessed. He moved to suppress his statement because he "was young and frightened and unable to understand the Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] warnings or the consequences of making the statement." Bonifay alleged that, if contacted, his mother would have told him not to talk with the deputies and that he would not have talked with them if allowed to see his mother. The judge ruled that a juvenile's statement made when a parent is not present is not per se involuntary, found Bonifay's statement to have been made freely and voluntarily, and denied the motion to suppress.
We find no merit to Bonifay's current claim that the court erred in not suppressing his statement. A trial court's ruling on a motion to suppress is presumed correct, Medina v. State, 466 So.2d 1046 (Fla. 1985), and a ruling on voluntariness will not be overturned unless clearly erroneous. Thompson v. State, 548 So.2d 198 (Fla. 1989). Here, Bonifay went with the deputies willingly, never requested the presence of an attorney or his parents even though that was offered, and specifically did not want his parents to be contacted. As stated by the United States Supreme Court, "coercive police activity is a necessary predicate to the finding that a confession is not `voluntary.'" Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). The deputies' calming Bonifay down by allaying his fears about the safety of his family and girlfriend did not amount to coercion. Bonifay has shown no error in the trial court's refusal to grant his motion to suppress.
Bonifay's convictions are supported by competent, substantial evidence, and we affirm those convictions.
Bonifay's mother testified on his behalf in the penalty phase. As his last question, defense counsel asked her if she thought Bonifay could be rehabilitated, and she answered in the affirmative. On cross-examination the prosecutor asked if she still thought he could be rehabilitated even being aware of all the things Bonifay had done. Bonifay waived the statutory mitigator of no prior criminal history and objected to this questioning. He now argues that the court erred by allowing the state to present evidence of prior criminal activity. We disagree.
It is proper to explore the basis for a witness' opinion. See Parker v. State, 476 So.2d 134 (Fla. 1985). To this end, the state can rebut testimony by a defendant's witnesses to give the jury a more complete picture or to correct misperceptions. See Hildwin v. State, 531 So.2d 124 (Fla. 1988), aff'd, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987); McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). The defense opened the door to questioning Bonifay's mother about her opinion that he could be rehabilitated, and the state did not elicit details from her, only an admission that she knew of her son's problems. Bonifay has shown no abuse of the trial court's discretion in allowing this questioning, and there is no merit to this argument.
The trial judge found that four aggravators had been established: committed during a robbery; committed for pecuniary gain; heinous, atrocious, or cruel; and cold, calculated, and premeditated. The trial judge considered the statutory mitigators and six proposed nonstatutory mitigators. He found that the facts supported finding only Bonifay's age and his good conduct and attitude while in jail in mitigation. The judge held that these mitigators deserved little weight and that they did not outweigh the aggravators. Bonifay now argues that the judge erred in his consideration of the aggravators and in not finding more mitigators and that death is a disproportionate sentence for him. Due to our resolution of this case, we discuss only Bonifay's arguments regarding the aggravators.
*1313 Bonifay argues that the court erred in finding both pecuniary gain and felony murder/robbery in aggravation. Ordinarily, when the sole underlying felony is robbery, it is improper to give separate consideration to these two aggravators. E.g., Bruno v. State, 574 So.2d 76 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991). This, however, is not the ordinary felony-murder case. Instead, it was a contract murder. Even though Archer later refused to pay Bonifay, Bonifay expected to receive payment over and above the proceeds of the robbery. Pecuniary gain, therefore, has been established independent of the robbery, and no improper doubling of the aggravators occurred.
The medical examiner testified that the two shots to the head would have resulted in the victim's immediate unconsciousness with death following in minutes, and Bonifay now argues that the facts do not support finding the heinous, atrocious, or cruel aggravator. As stated earlier, both Bonifay and Barth shot the victim once in the body before entering the store. Both Bland and Tatum testified that Bonifay told them the victim begged for his life. Bonifay, himself, said this in his tape-recorded statement as did Barth in his live testimony. Even so, we find that this murder, though vile and senseless, did not rise to one that is especially cruel, atrocious, and heinous as contemplated in our discussion of this factor in State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The record fails to demonstrate any intent by Bonifay to inflict a high degree of pain or to otherwise torture the victim. The fact that the victim begged for his life or that there were multiple gunshots is an inadequate basis to find this aggravating factor absent evidence that Bonifay intended to cause the victim unnecessary and prolonged suffering. Santos v. State, 591 So.2d 160 (Fla. 1991).
Because we cannot determine what effect finding the heinous, atrocious, or cruel aggravator had in the sentencing process, however, we vacate the death penalty and direct that a new sentencing proceeding be held. This factor was extensively argued to the jury, and a new jury should be empanelled to make a recommendation as to the appropriate sentence.
It is so ordered.
OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
SHAW, J., concurs specially with an opinion, in which GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs in part and dissents in part with an opinion.
SHAW, Justice, concurring specially.
I agree that the trial court erred in finding as an aggravating circumstance that the murder was committed in a heinous, atrocious and cruel manner. I do not believe, however, that the court erred in instructing the jury on this circumstance. The Florida Standard Jury Instructions in Criminal Cases recommends that the trial judge give a standard requested instruction on each aggravating circumstance for which some evidence has been presented: "Note to Judge  Give only those aggravating circumstances for which evidence has been presented." Fla. Std.Jury Instr. (Crim.) p. 75. This may logically be construed as requiring the trial judge to instruct on each circumstance for which a reasonable quantum of evidence has been presented. Cf. Stewart v. State, 558 So.2d 416, 420 (Fla. 1990) (trial court must instruct on each mitigating circumstance for which "a reasonable quantum of evidence" is presented). There was more than enough evidence to support this instruction in the present case. Because the jury was properly instructed, I would not send this case back for resentencing before a new jury. I would, however, send it back for resentencing before the judge in light of the fact that the defendant was seventeen years old at the time of the crime and this Court is now striking a substantial aggravating circumstance.
GRIMES and HARDING, JJ., concur.
BARKETT, Chief Justice, concurring in part and dissenting in part.
I would remand for imposition of a life sentence under article I, section 17, Florida *1314 Constitution, for the reasons I expressed in LeCroy v. State, 533 So.2d 750, 758 (Fla. 1988) (Barkett, J., concurring in part, dissenting in part), cert. denied, 492 U.S. 925, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989).
NOTES
[*] Archer was also convicted of first-degree murder and sentenced to death, and this Court affirmed his conviction but remanded for resentencing. Archer v. State, 613 So.2d 446 (Fla. 1993).